## Haycock *et al.*, Administrators, *versus* Greup.

1. The rule in this state respecting proof of handwriting by comparison with other writings established to be genuine is: that the comparison can be made only by the jury, and is not allowed as independent proof:—it can be used only as corroborative after evidence has been adduced in support of a writing.

2. The question was whether Shive had signed an assignment to Greup, who had given much evidence in support of the genuineness of the signature. Evidence was offered to establish the genuineness of writings in which the name of Shive had been written by *Greup* to submit them to the jury to compare with the signatures to the assignments. No previous evidence had been given that Greup had forged the name to the assignment, or that it was in his handwriting: the evidence was inadmissible.

3. The court has power to mould an informal verdict at the time it is returned.

[Haycock *v.* Greup.]

March 17th 1868.    Before STRONG, AGNEW and SHARSWOOD, JJ.    THOMPSON, C. J., at Nisi Prius.    READ, J., absent.

Error to the Court of Common Pleas of *Lehigh county:* No. 459, to January Term 1867.

This was a feigned issue, between John A. Greup, plaintiff, and Tobias Haycock and Elias Frederick, administrators, &c., of Peter Shive, deceased.

Peter Shive, the decedent, deposited $800 in the Dimes Saving Institution, and received a certificate as follows :—

" $800.             " Dimes Saving Institution of Allentown,
                            " Allentown, Pa., April 27th 1863.

" Peter Shive has deposited in this institution eight hundred dollars, payable to his order one year after date with 5 per cent. interest per annum on return of this certificate.    No interest paid for a fractional part of a month.

" No. 262.                     " WM. H. AINEY, President.
" CHAS. S. BUSH, Cashier."

On this was endorsed, " Aug. 7th 1863, Cash three hundred dollars, $300."

Also, " For value received I assign the within note to John A. Greup this tenth day of August, one thousand eight hundred and sixty-four.                     " PETER SHIVE."

On the 30th of April 1864, he deposited in the same institution $560, and received a similar certificate, on which a precisely similar assignment was endorsed.

After his death Greup, the assignee, sued the Saving Institution, and subsequently, September 8th 1865, it was agreed between Greup and the administrators that an issue should be framed " to determine whether the assignment of the certificates of deposit upon which suits were brought, is in the proper handwriting of Peter Shive, the intestate, and whether the said certificates, if so signed by the said Peter Shive, were delivered to the said John A. Greup for value during the lifetime of the said Peter Shive."

The plaintiff gave much evidence that the signatures to the assignments were in the handwriting of the decedent, also that the decedent had said that he had given the plaintiff " two notes on the Allentown Bank as a present;" of his expressions of interest in the plaintiff; that the plaintiff had lived with the decedent from boyhood, had been faithful to him; that his own relations rarely came to see him, &c.    The decedent had no wife or children.    Having given this evidence and shown the certificates and assignments, the plaintiff rested.

The defendants called a witness who knew the handwriting of the decedent, and testified that he did not think the signatures were the decedent's. ,

[Haycock *v.* Greup.]

The defendants proposed " to prove the handwriting of John A. Greup, and to establish the genuineness of several specimens in which the name of Peter Shive has been written by said John A. Greup, the plaintiff, in order to submit the said specimens to the jury, to compare with the signatures in dispute on this trial, averred to be the signatures of Peter Shive."

The evidence was rejected.

They then proposed " to prove that the signatures to the assignments are in the handwriting of John A. Greup, and for the purpose of proving this fact they offer in evidence specimens of the handwriting of John A. Greup, in which he has written the name of Peter Shive, to be submitted to the jury, to compare with the signatures to the assignment in suit."

This offer was rejected also and several bills of exception sealed.

The court directed the jury to find a special verdict upon all the issues raised in the cause, and informed them that as the court was about to adjourn, they should, after agreeing to their verdict, reduce it to writing, seal it, and bring it into court in the morning, and thereupon the court adjourned. The jury retired, agreed upon their verdict, reduced it to writing, sealed it up and separated. In the morning the jury returned into court and presented a sealed verdict as follows :—

" We agreed to detrume wether the assignment of the curtificates of deposits upon wich suut wure brought, is in the proper handwritening of Peter Shive their estate.

2. We agreed wether the said curtificuts is so signed by the said Peter Shive, wether the same wure delived to the said John A Greup.

3. We agreed for value during the lifetime of the said Peter Shive.

Verdick in favor of Plentiff."

The court having read the verdict of the jury, asked them whether they intended by it to find the following facts :

" Now, January 17th 1867, the jury do say that they find, 1st, That the signatures are in the proper handwriting of Peter Shive. 2d, That the certificates were delivered to John A. Greup in the lifetime of Peter Shive. 3d, That the same were delivered for value in the lifetime of Peter Shive ?"

To which the jury replied in the affirmative, and the court directed the prothonotary to enter the verdict of record as last stated, and to file the verdict first returned.

To all the proceedings in relation to the verdict the defendants objected, and at their request the court sealed a bill of exceptions. Judgment having been entered on the verdict, the defendants took a writ of error.

Their 1st and 2d assignments of error were, the rejection of their offers of evidence.

[Haycock *v.* Greup.]

The 3d assignment was the entering of the verdict as above stated.

*J. D. Stiles*, for plaintiffs in error, as to the 1st and 2d assignments, cited Farmers' Bank *v.* Whitehill, 10 S. & R. 110; McCorkle *v.* Binns, 5 Binn. 349; Lodge *v.* Pipher, 11 S. & R. 334; Travis *v.* Brown, 7 Wright 9; Baker *v.* Haines, 6 Wh. 284; 1 Greenl. Ev. § 581 and notes; 3 Id. § 106 note.

On the 3d assignment, he cited Reitenbaugh *v.* Ludwick, 7 Casey 132; McConnel *v.* Linton, 4 Watts 357; Wolfran *v.* Eyster, 7 Watts 39.

*J. H. Oliver*, as to 3d assignment, cited 1 Tr. & H. Pr. 511; Dornick *v.* Reichenback, 10 S. & R. 84; Rees *v.* Stille, 2 Wright 139; Keen *v.* Hopkins, 12 Id. 445; Reitenbaugh *v.* Ludwick, *supra.*

The opinion of the court was delivered, March 23d 1868, by

STRONG, J.—In this state the rule respecting proof of handwriting in civil cases, by comparison of it with other writings admitted to be genuine or proved to be genuine beyond a doubt, appears to be this. The comparison can be made only by the jury, and it is not allowed as independent proof. It can be used only as corroborative. After evidence has been adduced in support of a writing, it may be strengthened by comparing the writing in question with other genuine writings, indubitably such. Beyond this our cases do not go: Bank *v.* Whitehill, 10 S. & R. 110; Travis *v.* Brown, 7 Wright 9; and this is a departure from the English rule which excludes other writings entirely, when offered for the mere purpose of enabling the jury to judge of the handwriting by comparison, for reasons that must be admitted to have great weight. But even under our relaxed rule the evidence offered in this case and rejected was inadmissible.

The question at the trial was whether Peter Shive had signed certain assignments of certificates of deposit, purporting to have been made to John A. Greup, the defendant in error. After he had given considerable evidence to show that the signatures were in the handwriting of Shive, and had rested his case, the plaintiffs in error called a witness who testified to his belief that the signatures to the assignments were not those of Peter Shive. They then offered to establish the genuineness of several writings in which the name of Peter Shive had been written by John A. Greup, in order to submit them to the jury to compare with the signatures to the assignments. This being rejected, they renewed their offer in another form. They proposed to prove that the signatures to the assignments were in the handwriting of John A. Greup, and as the means of such proof they offered in evidence

[Haycock *v.* Greup.]

specimens of the handwriting of Greup, in which he had written
the name of Peter Shive, to be submitted to the jury for compari-
son with the signatures to the assignments.   This offer was also
rejected.

Up to the time when these offers were made there was no evi-
dence whatever that Greup had forged the name of Shive, or that
the signatures were in Greup's handwriting.   No witness had
expressed such a belief, or intimated a suspicion to that effect.
The evidence offered was not then corroborative of anything that
had previously been proved, or of anything with which it was
proposed to follow it.   Assuming, as we do, what does not clearly
appear, that the offer was to establish indubitably the genuineness
of Greup's handwriting in the specimens, yet, when that was estab-
lished, they could not have been received until ground had been
laid for their introduction by other proof that Greup wrote the
signatures to the assignments of the certificates.   Were this not
so, they would be primary and independent evidence of a fact,
when the law declares them admissible only as corroborative.
True, when the offers were made, it was alleged that Greup signed
the name of Shive, but it was alleged without evidence, and there
was therefore nothing more than an allegation to be corroborated.
The belief of a witness that the signatures to the assignments were
not in the handwriting of Peter Shive, was not the first step toward
proving that Greup wrote them.   For myself, I doubt whether if
there had been some evidence that the signatures to the assign-
ments were written by Greup, it could have been corroborated by
comparison with other specimens of his writing admitted, or clearly
proved, to be genuine.   No case in our books has gone to that
length, and so broad a doctrine has never been asserted.   Even
then it would have been allowing the jury to draw an inference of
one fact, from another fact, itself only an inferential conclusion.
For the question in this case was whether Peter Shive wrote the
signatures.   It is, however, not necessary to decide this.

If the testimony was admissible in this case, the plaintiffs in
error might have gone on and submitted specimens of the hand-
writing of other persons, A., B., C. and D. indefinitely, specimens
selected by themselves, that the jury might determine from com-
parison whether some one of them had not written the signatures,
and therefrom infer that Peter Shive had not.   The danger of
fraud in the selection of specimens, and the danger of surprise to
the opposite party are too great to warrant the allowance of any
such instruments of proof.   The 1st and 2d assignments of error
are not sustained.

The 3d assignment is that the court directed a verdict different
from the finding of the jury.   We do not understand such to have
been the fact.   The verdict is the one rendered in court, not that
which had been sealed up and brought in.   The paper brought in

[Haycock *v.* Greup.]

by the jury in this case was exceedingly unlettered, but it was a general verdict for the plaintiff below, and without asking an explanation from the jury the court might have moulded it into the form in which the verdict was recorded. The court simply asked an explanation, and it was given in open court. Then the jury declared that they meant to find what the record shows their verdict to have been. In all this we discover no error.

Judgment affirmed.