## Bitting *v.* Wolfe, Appellant.

Argued May 24, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Earl V. Compton,* with him *F. Brewster Wickersham* and *Compton & Handler,* for appellant.

*Martin H. Lock,* with him *Homer L. Kreider* and *William M. Young,* for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, June 27, 1951:

Norman C. Bitting sustained serious injuries while working as an electrical contractor in a store owned by Fanny Farmer Candy Shops, Inc., when two planks used as a walkway separated, causing him to fall. The planks had been put in place by Ray Wolfe, an independent contractor doing plumbing work on the premises. Bitting brought this suit in trespass against Wolfe and Fanny Farmer Candy Shops to recover damages for those injuries. Prior to trial Bitting died and his administratrix, Margaret C. Bitting, was substituted as plaintiff. The jury returned a verdict for plaintiff against Wolfe only. Judgment was entered for plaintiff after she filed a remittitur of all the verdict in excess of $6,647.48 and Wolfe has appealed seeking a judgment n.o.v. or, in the alternative, a new trial.

In June 1946, the Fanny Farmer Company undertook to have certain repairs made to its building located at 341 South Cameron Street, Harrisburg. Accordingly, Bitting was engaged to do the electrical work and Wolfe to do the plumbing work. Both were employed as independent contractors. While making the repairs it was customary for the workmen to use the rear door which opened onto a loading platform approximately four feet high with steps at one end running down to ground level. Part of Wolfe's job was to install a new sewer pipe. In order to do so he had dug a trench which ran the length of the loading platform. Upon completing that work he refilled the trench to within six inches of the top, leaving it in that condition so that it could be concreted over at ground level. He then laid wooden planks across the ditch to provide a walkway. The planks were put in place four or five days before the accident and were used frequently both by the workmen and employes of the Fanny Farmer Company. On June 28th, 1946, Bitting and his brother were carrying into the building a large electric motor which they had repaired. As Bitting stepped onto the walkway the planks separated causing his foot to slip between them and into the ditch. In the resulting fall he received serious and permanent injuries to his left knee and leg.

It is clear that Wolfe as an independent contractor was in possession of the area necessarily occupied by his work and is, therefore, subject to the same liabilities as any possessor of land: *Patterson v. Palley Mfg. Co.*, 360 Pa. 259, 61 A. 2d 861; *Powell v. Ligon*, 334 Pa. 250, 5 A. 2d 373. Since Bitting was a business visitor, Wolfe owed him a duty of due care to protect him from injury: *Bisson v. John B. Kelly, Inc.*, 314 Pa. 99, 170 A. 139; *Turner v. Robbins*, 276 Pa. 319, 120 A. 274. Wolfe urges, however, that there was no evidence to show that the walkway was improperly con-

structed or maintained and hence nothing from which the jury could find that he breached his duty.

This argument is thoroughly refuted by the record. Two witnesses testified that although the walkway appeared safe to the eye the planks were not fastened together and when Bitting stepped on them they separated. None of the boards was broken or in any way defective. From that evidence the jury could find, and obviously did, that Wolfe had failed to properly construct the walkway. *Gormley v. Union Pav. Co.*, 95 Pa. Superior Ct. 78, is identical with this case in all essential details. There, defendant was repairing a street and had laid a temporary crosswalk of railroad ties. As plaintiff stepped from a trolley car onto the ties, the ties separated and she was injured. The Superior Court stated, at pp. 80-81: ". . . [liability] rests on the evidence tending to show that in view of all conditions present and apparent at the time the ties were laid, due care was not used to secure them in such manner as to prevent spreading apart from the strain of the ordinary traffic that was reasonably to be anticipated."

Here, Wolfe knew that many employes of the Fanny Farmer Company as well as independent workmen would necessarily use that walkway daily. He knew too that heavy loads would be carried over it and that such loads would require a stronger and better walkway than otherwise might be necessary. He also knew or should have known that persons carrying large, heavy objects cannot exercise the same degree of care in placing their feet as one who is unencumbered. Knowing these facts he was under a duty to construct a walkway that was reasonably safe for the anticipated use. Whether his failure to fasten the planks together constituted a breach of that duty was properly left to and decided by the jury after appropriate instructions by the learned trial judge.

In support of his motion for new trial, Wolfe contends that it was error to permit the hourly pay of electricians to be used to establish the loss sustained by Bitting who was an electrical contractor. The record reveals that Bitting worked with his employes as an electrician. In computing the price of a job he would naturally include an item for his time and in addition a profit for his business. The fact that his administratrix proved only the former item when she could have also shown the loss sustained to the business as a result of his incapacity, is certainly no grounds for Wolfe to complain. See *Murphy v. Pittsburgh Railways Co.*, 292 Pa. 191, 140 A. 897.

In his charge the trial judge instructed the jury that they should include in their computation of damages medical expenses, loss of earnings, and an item for pain and suffering. Because of the lateness of the hour he directed the jury to seal its verdict and present it in court the following day. This was done and the verdict when opened included amounts for loss of earnings and medical expenses and then stated, "$5500.00 damages to Mrs. Margaret C. Bitting, making a total of $10,147.48 . . ."[1] The trial judge upon reading this, told the jury that Mrs. Bitting was not entitled to any award. He then questioned the jury as to what they intended and was informed by the forelady that it was intended to cover pain and suffering which Bitting endured as a result of the accident. The other members of the jury all assented and the court then molded the verdict accordingly and ordered it recorded. Wolfe contends that in so doing the court recorded an entirely new and different verdict than was returned by the jury. Had not the jury separated over night

---

[1] After argument before the court en banc the verdict was reduced by remittitur to $6,647.48 and judgment was then entered for that amount.

after reaching its verdict, the trial judge would undoubtedly have sent the jury back to correct the verdict after giving them further instructions. Under the circumstances here it was not improper to have the jury explain what they intended and then record the verdict properly. Appellate courts have always allowed trial judges great latitude in molding verdicts. As the learned judge in the court below said: "It is well settled that a Court has the power to mould a verdict to agree with the obvious intention of the jury: Wadatz, Admrx. v. Taormina, 356 Pa. 481, even, in certain instances, after the verdict has been received and recorded: Maize, Admr. v. Atlantic Refining Company, 352 Pa. 51. The power of the Court over a sealed verdict is no different than that over a verdict rendered in the usual and ordinary way in open court. No sealed paper is a verdict until it is recorded. Therefore, at least until the verdict becomes a part of the record, it is within the discretion of the trial court to send the jury back after it has separated to consider, clarify or correct mistakes so that the verdict will be in proper form: Reitenbaugh v. Ludwick, 31 Pa. 131; Haycock v. Greup, 57 Pa. 438; Smith v. Meldren, 107 Pa. 348; Kramer v. Kister, 187 Pa. 227; Columbia Glass Company v. Atlantic Glass Company, 43 Pa. Superior Ct. 367; Di Santo v. Alper, 99 Pa. Superior Ct. 46.

"Thus, in Kramer v. Kister, supra, Mr. Justice MITCHELL, speaking for the Supreme Court said, page 233: 'The practice of allowing the jury to seal a verdict and then separate is very general throughout the United States. Seventy-five years ago Chief Justice GIBSON spoke of it as in common use in Pennsylvania, having grown out of and superseded the privy verdict known to the common law, which was delivered to the judge out of court: Dornick v. Reichenback, 10 S. & R. 84. Both forms were alike in being without binding force as verdicts until delivered by the jury in court. All the

authorities agree that the only verdict is that which the jury announce orally in court, and which alone is received and recorded as the jury's finding: Dornick v. Reichenback, supra; Scott v. Scott, 110 Pa. 387; Com. v. Breyessee, 160 Pa. 451. . . . A verdict which is merely defective in form, whether sealed or not, and whether the jury have separated or not, may before it is recorded be recommitted to them for correction. . . .' "

The record in this case is free from error. There is nothing in it which would justify or even indicate a reversal of the learned court below.

Judgment affirmed.