Groh *v.* Philadelphia Electric Company, Appellant.

Argued May 6, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused November 27, 1970.

*John R. McConnell,* with him *Raymond T. Cullen, Jr.,* and *Morgan, Lewis & Bockius,* for appellant.

*Bernard Edelson,* with him *B. Nathaniel Richter, Kenneth Syken,* and *Caine, DiPasqua & Edelson,* and *Richter, Syken, Ross, Binder & O'Neill,* for appellee.

OPINION BY MR. JUSTICE COHEN, October 9, 1970:

This is an appeal by the Philadelphia Electric Company, appellant, from a judgment entered in favor of Theresa Groh, Administratrix of the Estate of Elwood F. Groh, in an action in trespass. Appellee's decedent was foreman of the maintenance crew at the Anchor Finishing & Dyeing Company located at Adams Avenue and Leiper Street in Philadelphia. Groh had held this job for two years, when on the morning of May 29, 1961, he was assigned the job of removing the rainspouting on the outside of the building facing Adams Avenue. Running parallel to the building along Adams Avenue and six feet, three inches from it was appellant's transmission line. The lowest line was about forty feet above the street, and the highest line was about two feet below the windowsills of the fourth floor of the building.

In the wall to which the downspouting was secured and adjacent to the downspouting was a window which opened by pivoting on its horizontal axis. The window was opened, and decedent straddled the sill, sitting beneath the opened portion of the window. One leg was outside the window; the other was inside and next to some pipes. Decedent leaned under the sash and outside the building, and he then disconnected a ten-foot

section of the rainspout and maneuvered it so as to bring it under the opened portion of the window and into the building. At this point there was a sound and a flash. Decedent was badly burned and died on June 2, 1961.

Appellee filed a complaint in trespass which stated that the action was being brought under the Wrongful Death Act, Act of April 26, 1855, P. L. 309, as amended, 12 P.S. §1602, and Pa. R. C. P. 2202(a). On May 22, 1967, after the trial had begun, the court below permitted appellee to amend the complaint to state a cause of action on behalf of decedent's estate under the Survival Act, Act of April 18, 1949, P. L. 512, as amended, 20 P.S. §320.601. The jury returned a lump sum verdict of $80,000 which the court molded so as to allocate $65,500 to the Wrongful Death Action and $14,500 to the Survival Action. After denial of motions for a new trial and judgment n.o.v. by the court en banc, this appeal was taken.

The Philadelphia Electric Company argues that appellee failed to present any credible evidence from which the jury could reasonably find it negligent, that decedent was contributorily negligent as a matter of law and that the cause of action under the Survival Act was barred by the statute of limitations.

As to evidence of its negligence, appellant argues that appellee's case rested totally on the testimony of its one expert witness and that his testimony was so contradictory as to be worthless. On direct examination the expert, Dr. Kaplan, testified that the National Bureau of Standards Electrical Safety Code was a commonly accepted standard of good practice and that it recommended an eight foot clearance from the side of a building for 13.2 KV transmission lines. On cross-examination the witness admitted that of the three wires making up this 13.2 KV line the voltage from

any one wire to ground was between 7500 and 7800 volts and that under the literal wording of the National Electric Safety Code a conductor of such voltage could be within three feet of the wall. In spite of the literal wording of the Code, the witness stated: "A. I feel that, specifically, the code intended a clearance of eight feet in the case of a 13.2 voltage line, with voltage line-to-line (as opposed to line-to-ground), what would be called in the industry a thirteen-thousand-volt line. I know of no one in the operation of the industry who would refer to these lines as 7500 volts, and in view of my understanding of the industry I think the 13.2 thousand volt spacing is what the code intended it to be. And that is what should have been used in this case." And later: "A. It seems to me that from reading some of the discussions that entered into the setting up of this code it was intended that reasonable good space should be maintained for the purpose of safety and it seems to take a line of thirteen thousand volts and put it within three feet of a window doesn't seem to me that would be very safe practice. Q. Well, don't you agree with what the table says? Doesn't it refer to conductors and not to lines, this Table 4? A. You are absolutely correct there. There is no indication as to whether it is from line to line or from line to ground. According to this, it can come within a three-foot clearance, but as a matter of purely professional experience, I don't think it would be safe." And finally: "Q. At the time of the accident, was the wire that was six feet, three inches from the side of the building a safe installation or unsafe within the standards, judged by the standards at that time? A. I think, within the intent of the National Safety Code, it was too close in the absence of any guards or protection."

Thus, the jury had before it the literal terms of the Code, the witness' interpretation of the spirit of the

Code, and the witness' opinion independent of (and in fact contrary to the literal wording of) the Code. In presenting the latter two pieces of evidence, appellee did present sufficient evidence to go to the jury and evidence from which the jury could reasonably have found appellant negligent.

Appellant's argument that decedent was contributorily negligent as a matter of law is a three-pronged one: (1) decedent saw or should have seen the wires, (2) decedent was specifically warned to be careful while working around the wires, and (3) decedent chose a dangerous method of removing the downspouting when two safe alternatives were available.[1] As a subpoint to these appellant argues that it was error for the court below to have instructed the jury that appellee's decedent was entitled to a presumption of due care.

In a long series of cases this Court has held that the mere presence of power lines does not indicate an obvious danger and that the public is not charged with knowledge of the amount of current in (and thus the risk associated with) a particular line. *Stimmel v. Kerr*, 394 Pa. 609, 148 A. 2d 232 (1959); *Brillhart v. Edison Light & Power Company*, 368 Pa. 307, 313-14, 82 A. 2d 44 (1951); *Ashby v. Philadelphia Electric Company*, 328 Pa. 474, 195 Atl. 887 (1938).[2] Therefore, the mere fact that decedent saw or should have seen the lines does not make him contributorily negligent as a matter of law.

It is true that in *Kronk v. West Penn Power Company*, 422 Pa. 458, 463, 222 A. 2d 720 (1966), we stat-

---

[1] For a general discussion of problems in this field, see Nakles, Electrical Injuries in Pennsylvania, 74 Dickinson L. Rev. 389 (1970).

[2] For an extreme case in which it was held that the issue of contributory negligence was for the jury see *Fitzgerald v. Edison Electric Illuminating Company*, 200 Pa. 540, 50 Atl. 161 (1901).

ed: "it is clear that he (the plaintiff) could easily have seen the power lines if he had looked overhead before or while raising the mast . . . . Under these facts and circumstances, plaintiff's elevation of the mast without looking overhead, particularly when the lines would have been plainly visible if he had looked, was contributory negligence per se." That opinion, however, was joined in only by a plurality of the Court, and that language was dictum as we had already held the defendant not negligent. *Eberlin v. Philadelphia Electric Company*, 306 Pa. 239, 159 Atl. 439 (1932), is distinguishable from the one before us because the plaintiff there had specifically been warned by his superior to be careful with respect to these wires. On its facts *Rank v. Metropolitan Edison Company*, 370 Pa. 107, 87 A. 2d 198 (1952) is inapposite.

On its argument that decedent was contributorily negligent as a matter of law because he had been warned to be careful while working around these wires, appellant relies on the testimony of Ferdinand Schmieder, a subordinate of decedent, who testified that their superior had warned the whole work crew to be careful of the wires outside the building before they began this job. On redirect examination, however, appellee introduced a statement which Schmieder had made and signed on September 3, 1964 in which he stated that he had never been specifically warned about those wires. While this prior inconsistent statement could not be used as substantive evidence of the truth of the matter stated, it could be used to impeach the witness' credibility. *Bizich v. Sears, Roebuck & Company*, 391 Pa. 640, 645, 139 A. 2d 663 (1958) ; *Harrah v. Montour Railroad Company*, 321 Pa. 526, 184 Atl. 666 (1936). Therefore, it was for the jury to decide whether the specific warnings about these wires had ever been given, and we cannot decide this as a matter of law.

Appellant argues that there were two entirely safe methods of proceeding and that decedent was contributorily negligent as a matter of law because he disregarded these and chose a perilous course. It points out that a rope could have been tied to the rainspout and the spout lowered to the ground or pulled up to the roof. While appellant states that, "This would have eliminated any possibility of the rainspout's inadvertently contacting defendant's wire," there is nothing in the record to support the conclusion that this method was any safer than the one decedent tried. It also states that decedent could quickly (five minutes) and easily have removed the entire center section of the window which maneuver would have given him more room in which to work and would have eliminated the necessity of working in an awkward position. Decedent's son, however, testified that the window could not have been taken out in five minutes and that only about half the window, from side to side, could be removed. Therefore, it was for the jury to evaluate decedent's decision not to pursue that course.

In *Skoda v. West Penn Power Company*, 411 Pa. 323, 332-3, 191 A. 2d 822 (1963), we stated, "The decedent is presumed to have exercised due care for his safety, and a finding as a matter of law that he was contributorily negligent requires evidence so clear, direct and positive as to preclude any difference in the minds of fair and reasonable men with regard to it. [Citation omitted] It is only in clear cases and where there is no room for fair and reasonable disagreement as to the existence of contributory negligence that the court will declare it to exist." And in *Allison v. Snelling & Snelling, Inc.*, 425 Pa. 519, 525, 229 A. 2d 861 (1967), we stated, " 'The presumption that a person who has lost his life exercised due care is not applicable where the plaintiff's own testimony clearly estab-

lishes the decedent's negligence.'" As appellee's testimony did not clearly prove decedent's negligence and as we cannot find decedent contributorily negligent as a matter of law under the test cited above, it was not improper for the court to have charged the jury on the presumption of due care.

Appellant's third basic argument is that appellee's cause of action under the Survival Act was barred by the statute of limitations and that the court below erred in permitting the amendment of the complaint to state such a claim. As a corollary to this appellant contends the trial court improperly admitted evidence as to decedent's earnings and his pain and suffering and improperly instructed the jury that appellee could recover damages therefore. The accident occurred May 29, 1961; the initial complaint was filed on August 24, 1961, and the motion to amend was filed on May 22, 1967, long after the two year statute of limitations on the Survival Action had expired.

We have discussed the problem of amendments of complaints involving Survival and Wrongful Death actions in two cases: *Schwab v. P. J. Oesterling & Son, Inc.*, 386 Pa. 388, 126 A. 2d 418 (1956) and *Piacquadio v. Beaver Valley Service Company*, 355 Pa. 183, 49 A. 2d 406 (1946). Those cases held that a plaintiff may not introduce a new cause of action by amendment of the complaint after the statute of limitations on that cause of action has run but that he may amend by introducing an added claim of damage or by amplifying what has already been averred. We emphasized the fact that the rights conferred by the Wrongful Death Act and the Survival Act constitute separate and distinct causes of action.

Appellee denies that the amendment involved a new cause of action and contends that she had averred the essence of a Survival Action in paragraph 8 of the origi-

nal complaint. That paragraph stated, "The decedent lived for five days after the within described incident, during which time he suffered great and excruciating pains, of such indescribable nature as to cause his death on the late afternoon of June 2, 1961." In paragraph 12 of the complaint, however, appellee specifically stated that this action was being brought under the Wrongful Death Act and Pa. R. C. P. 2202(a). Although she did not have to specify the statutory basis for her claim, *Schwab,* supra at 393, when she did so, she cannot be heard to say that she meant something else. Also, paragraph 8 is merely descriptive and in no way gives appellant any notice that a claim is being asserted under the Survival Action. *Schwab* is distinguishable for (a) in paragraph 9 of the original complaint in that action, 386 Pa. at 389-90, the plaintiff made a claim cognizable only under the Survival Act and thereby gave proper notice to the defendant and (b) the plaintiff nowhere in the complaint stated specifically that suit was being brought under the Wrongful Death Act.

Therefore, as appellee's amendment stated a new cause of action for which the statute of limitations had expired, appellant's motion for judgment n.o.v. as to the Survival Action should have been granted. That, however, does not mean that appellant is entitled, as it claims, to a new trial on the Wrongful Death claim.[3] The jury returned a lump-sum verdict of $80,000 which the court molded in the amount of $14,500 for the Survival Action and $65,500 for the Wrongful Death Action. The parties expressly agreed to this allocation, and upon a close consideration of the record as a whole we cannot say that the $65,500 allocated to the Wrongful Death Action represented an excessive verdict.

---

[3] It claims that it is impossible to ascertain to what extent the jury's total verdict was influenced by its consideration of decedent's pain and suffering and of the loss to his estate.

The judgment in the amount of $14,500 in the Survival Action is reversed. The judgment in the amount of $65,500 in the Wrongful Death Action is affirmed.

---

CONCURRING AND DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I agree with the majority Opinion that the judgment in the survival action must be reversed, and judgment n.o.v. entered for defendant.

With respect to the judgment in the wrongful death action, I dissent and would grant a new trial in the interest of Justice.

Plaintiff relied upon the testimony of only one witness, Martin Kaplan, an electrical engineer, to establish the standard of care in the industry—namely, how far a noninsulated electric wire should be from a window—and consequently negligence on the part of the defendant. Defendant's negligence must, of course, be established by plaintiff by a fair preponderance of the evidence in order to support the verdict. Kaplan's interpretation of the National Electrical Safety Code was not in conformity with, but was contrary to, the language of the 1960 Supplement to the Code (which he himself admitted) and was based upon a clearly unsupportable deduction. Furthermore, if it could be supported at all, which is very doubtful, it did not establish plaintiff's burden of proving defendant's negligence by a fair preponderance of the evidence, and has resulted in an obvious gross miscarriage of Justice. For these reasons, a new trial must be granted in the interest of Justice. As we said in *Frisina v. Stanley,* 409 Pa. 5, 185 A. 2d 580 (page 7) : " '. . . "[w]here a trial Judge or Court sees and hears the witnesses, it has not only an inherent fundamental and salutary power, but it is its duty, to grant a new trial when it believes the verdict was capricious or was against the weight of the

evidence *and** resulted in a miscarriage of justice [citing numerous recent cases] . . .

" ' "Moreover, in such circumstances, . . . it should not be allowed to stand, no matter how many new trials must be granted in the interest of justice: [citing numerous cases]** . . ." ' "

While an appellate Court will generally reverse the grant or denial of a new trial only if " ' "(1) there was a clear abuse of discretion or (2) an error of law which controlled the outcome of the case, . . . [citing numerous recent cases] :" Segriff v. Johnston, 402 Pa. 109, 114, 166 A. 2d 496.' Bohner v. Eastern Express, Inc., 405 Pa. 463, 471-472, 175 A. 2d 864. Accord: F. C. Haab Co., Inc. v. Peltz Street Terminals, Inc., 407 Pa. 276, 180 A. 2d 35," this general rule is subject to the exception that an appellate Court will grant a new trial if it is convinced that the interests of Justice demand it.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am in complete accord with the opinion of the majority except insofar as it holds that the appellee was barred from recovering survival action damages by the statute of limitations.

It is my view that this case is controlled by our decision in *Schwab v. P. J. Oesterling & Son, Inc.,* 386

---

* Italics throughout, ours.
** *Elia v. Olszewski,* 368 Pa. 578, 84 A. 2d 188; *Maloy v. Rosenbaum Co.,* 260 Pa. 466, 103 Atl. 882; *Olewell v. Pummer,* 388 Pa. 592, 598, 599, 131 A. 2d 375. See to the same effect: *Sherman v. Manufacturers Light and Heat Company,* 389 Pa. 61, 68, 132 A. 2d 255; *Greco v. 7-Up Bottling Company,* 401 Pa. 434, 165 A. 2d 5; *Hartigan v. Clark,* 389 Pa. 283, 288, 289, 133 A. 2d 181; *Lupi v. Keenan,* 396 Pa. 6, 8, 151 A. 2d 447; *Coward v. Ruckert,* 381 Pa. 388, 393, 113 A. 2d 287; *Frank v. Losier & Co., Inc.,* 361 Pa. 272, 276, 64 A. 2d 829.

Pa. 388, 126 A. 2d 418 (1956), where we said: "That the rights respectively conferred by the Wrongful Death Act of 1855 and the Survival Act of 1937 constitute separate and distinct causes of action is not open to question. We expressly so held in Piacquadio v. Beaver Valley Service Co., 355 Pa. 183, 49 A. 2d 406. In that case, leave to amend a complaint in order to bring upon the record the administrator of the estate of the deceased victim of the tortious act there involved so that the personal representative might claim damages under the Survival Act was denied because the statute of limitations had run. The action had been instituted by the father of the deceased minor victim in the capacity of trustee ad litem for those entitled to damages under the Wrongful Death Act (see Rule 2202(b) Pa. R. C. P.), and damages were claimed only for wrongful death. An administrator of the deceased minor's estate, for the purpose of pressing a claim under the Survival Act, had never been a party to the record before the statutory limitation had expired. Such, however, is not this case.

"Here, the administratrix, who, as her deceased son's personal representative, was duly qualified to bring suit under the Survival Act (Fiduciaries Act of 1949, Sec. 603), was plaintiff in the action from the time of its institution which was well within the period of the statutory limitation. And, since the action was instituted within six months of her son's death, she was also exclusively entitled as the administratrix of his estate to maintain the suit for damages for his wrongful death: see Rule 2202(a), (b) and (c) Pa. R. C. P. Thus, she was in court timely in an action (see Rule 213(e) Pa. R. C. P.) where she could pursue either or both of the causes which the Wrongful Death and the Survival statutes conferred upon her in her representative capacity for the negligence which brought about

the injury and death of her son as averred in the complaint. While the better practice would be to plead in separate counts the respective causes of action for which damages are sought, it is not fundamentally essential to specify in a complaint the particular Act under which recovery is sought. The amendment of paragraph 9 of the complaint did not, therefore, introduce a new cause of action. It merely brought in an additional element of damage for a cause of action already within the compass of the original complaint." 386 Pa. at 392-93, 126 A. 2d at 420.

I am convinced that it would be a gross misuse of the statute of limitations to hold that it bars recovery on the survival action claim in this case. The statute of limitations is designed to prevent parties from pressing stale claims and to force issues to trial before memories become too dim and evidence too hard to find. In this context it is clear that the inclusion of the survival claim imposed no new burdens on the appellant. And, the appellant can hardly maintain that the survival claim caught it by surprise in view of the allegations of decedent's pain and suffering contained in the eighth paragraph of appellee's complaint, which should certainly have alerted appellant to the possibility of a survival action claim in appellant's suit. In fact, the dual capacity of the appellee in this case should have rendered unreasonable any assumption other than that she intended to press both the wrongful death and the survival claims. As in *Schwab*, the appellant here knew well that it was faced with a lawsuit timely filed by an individual qualified to press both the wrongful death and the survival action claims; as in *Schwab*, the appellant was confronted with a complaint which, while not spelling out the statutory basis for the survival claim, did contain reference to damages which were recoverable only in a survival action; and as in *Schwab*,

the amendment "merely brought in an additional element of damage for a cause of action already within the compass of the original complaint." 386 Pa. at 393, 126 A. 2d at 420.

I would affirm as to both portions of the verdict.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE POMEROY:

Since my agreement and disagreement with the majority does not completely coincide with either of the other separate opinions, I must briefly state my own views.

(1) As to negligence, while the evidence was thin indeed, resting as it did on somewhat wobbly expert testimony of one witness, I agree with the opinion of the Court that there was enough to take the case to the jury. If this be true, there is no basis for a new trial on the ground the verdict was against the weight of the evidence; the defendant put in no evidence, and did not ask for a new trial on that ground.

(2) As to contributory negligence, the evidence as I read it showed it to be present as a matter of law. Without belaboring the point, the plaintiff's decedent was permanently employed at the building where the unfortunate accident occurred as foreman of the building maintenance crew. Thus he was no stranger to the premises; he knew of the existence of the wires, which were clearly visible; he was specifically told by his superior to "be careful about the wires";[1] in straddling the window sill as he did decedent assumed an unnecessarily awkward position in seeking to get at the drainspout; he avoided using at least one obviously safe way

---

[1] There is no law that I know of that such a warning about electric wires need expressly refer to them as uninsulated high voltage wires.

of bringing the spout into the building.[2] The presumption of due care to which a decedent is properly entitled does not serve to impose liability in the face of this kind of a showing. I think the case is ruled by *Eberlin. v. Philadelphia Electric Co.*, 306 Pa. 239, 159 Atl. 439 (1932) and *Rank v. Metropolitan Edison Co.*, 370 Pa. 107, 87 A. 2d 198 (1952). In my view the learned trial judge should have granted a nonsuit, and, not having done so, judgment n.o.v. should be entered.

(3) Since the court is not granting judgment n.o.v., as I believe it should, the matter of the propriety of allowing the amendment of the complaint to include the survival action must be faced. The court *en banc* held that the amendment "merely amounted to a reshaping of the complaint for purposes of clarity . . ." and was justified on the authority of *Schwab v. P. J. Oesterling & Son, Inc.*, 386 Pa. 388, 126 A. 2d 418 (1956). With this I agree. The amendment was merely making explicit what was implicit in a complaint rather loosely drawn by appellee's then counsel. I accordingly concur in the dissenting portion of Justice ROBERTS' concurring and dissenting opinion.

---

[2] I disagree with the majority that the testimony of Schmieder, the sole witness as to the occurrence, was impeached by his prior statement. The statement said: "I was never warned specifically about the wires outside the building on Adams Avenue." At trial the witness testified that this referred to other warnings given before the day of the accident, and reiterated that before this particular job the crew had again been warned. "We were all warned, all of us, before we went on that job," he said.