438

Pniewski, Appellant, *v.* Kunda et al.

Argued June 9, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James P. Geoghegan,* with him *Edward J. Ozorowski,* and *Geoghegan & Ozorowski,* for appellant.

*Gilbert P. High, Jr.,* with him *Richard K. Masterson, Michael G. Trachtman,* and *High, Swartz, Roberts & Seidel,* and *Waters, Fleer, Cooper & Gallager,* for appellees.

OPINION BY PRICE, J., December 1, 1975:

Plaintiff-appellant's decedent, Zenon Pniewski, was fatally electrocuted on September 10, 1968, while in the process of erecting steel beams for the construction of new offices for the corporation of which he was half-owner. At the time, a crane was being used to position the beams on the foundation and Pniewski was guiding the beams onto bolts protruding from the concrete. The crane was rented from defendant-appellee Kunda Sign Company, who also supplied the crane operator. During this process, the crane operator brought the crane within six feet of a high voltage electric wire, owned by defendant-appellee Philadelphia Electric Company. When the beam came to within six inches of the bolts beneath it, an electric current arched from the wire to the ground, killing Pniewski.

Appellant filed wrongful death and survival actions against the appellees and it is from the judgments rendered in those actions that appellant appeals. Only one question is raised on this appeal: Did the trial court err in molding the verdict to conform to the intent of the jury. We hold that the lower court did err and will therefore reverse and grant a new trial as to damages.

After the jury had been deliberating, on and off, for approximately twenty-four hours, they submitted the following question to the judge:

"Will you please differentiate Survival Action and Wrongful Death Action, both in terms of determining which award is selected and in terms of how the amount of the actual award is determined."

The trial judge repeated his earlier charge on these matters, which included a discussion cautioning the jury against duplication of damages. The jury retired for twenty-five minutes and returned with a verdict for the appellant of $110,336.00, "with no award for pain and suffering" in the wrongful death action. When the clerk began to read the survival action verdict, the foreman interrupted and the following discussion took place:

"FOREMAN: That sheet is crossed out. We did not use the Survival Action sheet.

THE COURT: What is your verdict in that action?

FOREMAN: We listened to you. We understood that both Actions should be put on the Wrongful Death Action sheet, because you repeated the instructions, for the period between the date of death and the date of trial."

At that point, the court requested to see counsel in chambers, to determine what the next course of action should be. At least one of the attorneys believed that the jury had intended a verdict of $110,336.00 in the wrongful death action and a verdict of zero damages in the survival action. The court was of the opinion that the verdicts in the two actions had been "blended".

The four attorneys present were also of differing opinions as to what action should be taken. The court concluded that the best procedure was to send the jury back to find a verdict in the survival action. That decision was not improper under the circumstances. When a jury reaches an ambiguous or improper verdict, one proper remedy is to permit them to correct the mistake or ambiguity. *Ason v. Leonhart*, 402 Pa. 312, 165 A.2d

625 (1960); *Anstine v. Pennsylvania Railroad Company,* 342 Pa. 423, 20 A.2d 774 (1941). Unfortunately, in this case, the events that followed reveal that the mistake or ambiguity was not resolved.

Thirty-five minutes after the jury retired, they returned with a verdict of $41,333.00 in the survival action. They were asked by the judge if they agreed to both verdicts, and, when no juror dissented, they were dismissed. They had taken the wrongful death action verdict slip with them into the jury room, but they had not changed it.

Subsequently, the court granted the appellees' motion to mold the verdict by subtracting the $41,333.00 survival action verdict from the $110,336.00 wrongful death action verdict. This left a total verdict identical to the one initially announced by the jury.

It is well-settled that a court has the power to mold a jury's verdict to conform to the clear intent of the jury. *Groh v. Philadelphia Electric Company,* 441 Pa. 345, 271 A.2d 265 (1970); *Bitting v. Wolfe,* 368 Pa. 167, 82 A.2d 21 (1951); *Longberry v. Paul,* 205 Pa. Superior Ct. 435, 211 A.2d 107 (1965).[1] However, this rule does not apply where the jury's intention is less than clear. *May v. Pittsburgh Railways Company,* 209 Pa. Superior Ct. 126, 224 A.2d 770 (1966).

The initial question we confront, then, is whether the jury's intent was clear in this case. We do not believe that it was. During their deliberations, the jury submitted questions to the court on four occasions. When the jury finally returned with a verdict, the foreman stated that, "[w]e listened to you. We understood that both Actions

---

1. In *Longberry,* this court noted in dicta, that the preferred practice is to mold the verdict before the jury is discharged. *See also Carroll v. Kirk,* 144 Pa. Superior Ct. 211, 19 A.2d 584 (1941). In this case, the lower court chose not to engage in a discussion with the jury, because it feared that the discussion would degenerate into an argument. In any case, the correctness of that decision has become moot at this point.

should be put on the Wrongful Death Action sheet. . . ." A thorough examination of the court's charge discloses that the court did not instruct the jury that they were to place both verdicts on one sheet. The sole restriction issued by the judge was a cautionary instruction to avoid duplication of damages.

The jury's first verdict, then, was ambiguous and had to be corrected. The second verdict rendered by the jury, however, does not help to illuminate their intent. On the contrary, the jury's second verdict convinces us that their intent is impossible to deduce. The jury was instructed to return and find a verdict in the survival action, which is exactly what they did. However, whether the jury intended to allow the judge to correct the verdict in the wrongful death action, or whether they intended to render an entirely new verdict, is purely speculative.

In its opinion, the lower court attempted to show that the jury intended to award a total verdict of $110,336.00. However, it is clear that the lower court judge was only speculating as to what the jury was trying to do and as to what the jurors must have thought.

We fully appreciate the complexity of trying to distinguish survival actions from wrongful death actions for a jury. The concepts involved are easy neither to explain nor to understand. We also appreciate the value placed upon finality in judicial proceedings. But in this case we are overwhelmed by the injustice that might result from either apportioning the jury's initial verdict or from reinstating their amended verdict. The only result in this case that can be supported by either logic or fairness is to remand for a new trial as to damages.[2]

It is so ordered.

---

2. On this appeal, the appellees do not dispute their liability, nor do they contend that there were any errors at trial. Thus, a new trial limited to the issue of damages is proper in this case. *See Daugherty v. Erie Railroad Company*, 403 Pa. 334, 169 A.2d 549 (1961).