449 A.2d 697

HOUSE OF PASTA, INC., Appellant,

v.

Charles A. MAYO and Vincent G. Corradino.

Superior Court of Pennsylvania.

Argued June 14, 1979.

Filed Aug. 13, 1982.

Daniel H. Shertzer, Lancaster, for appellant.

Joseph J. Lombardo, Lancaster, for appellees.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SUGERMAN, Judge:

The question we address in this Appeal is whether a jury returned a verdict in both or only one of two civil actions consolidated and assertedly tried together. The lower court found that a verdict in only one of the two actions had been returned and thereupon molded the verdict accordingly.

From the record we observe that Appellees, Charles A. Mayo and Vincent G. Corradino, leased a building to Appellant, House of Pasta, Inc. on October 20, 1971 for a term of ten years. On or about May 22, 1975, the premises were destroyed by fire, and on the same day, Appellant vacated the premises. On May 27, 1975, four days subsequent to Appellant's removal, Appellees confessed judgment under the lease against Appellant in the sum of $66,953.67, representing rental for the balance of the term of the lease, and counsel fees ("Confessed Judgment Action"). A few days later, Appellant filed a petition to open the judgment and the lower court granted the prayer of the petition, opened the judgment and let Appellant into a defense.

* Pres. Judge JOHN Q. STRANAHAN, of the Court of Common Pleas of Mercer County, Pennsylvania, is sitting by designation.

Judge LEONARD SUGERMAN, of the Court of Common Pleas of Chester County, Pennsylvania, is sitting by designation.

At the date the lease was executed by the parties, Appellant posted a security deposit with Appellees in the sum of $5,866.64. At a date subsequent to Appellant's vacating the leasehold premises, Appellant demanded a return of the security deposit. Appellees refused, and on December 29, 1975, Appellant filed a complaint in assumpsit alleging a determination of the lease by reason of the fire and seeking a judgment in the sum of $5,866.64, representing the amount of the security deposit ("Assumpsit Action"). Appellees filed an answer containing new matter and a counterclaim. In their new matter, Appellees alleged that the fire was caused either by an intentional act on the part of Appellant or by Appellant's gross negligence and that as a result, Appellant's attempt to terminate the lease was unavailing.

In their counterclaim in the Assumpsit Action, Appellees asserted a variety of claims against Appellant, including a claim in the sum of $5,835.45 representing unpaid taxes and sewer rentals, removal of fixtures and damages to the premises. Appellees also claimed rental allegedly due in the sum of $32,806.40, or a counterclaim in the total sum of $38,641.85. A jury trial was demanded and the parties agreed prior to trial to consolidate both the Confessed Judgment Action and the Assumpsit Action for trial.

Trial commenced on June 20, 1976 and concluded on June 23, 1976. In the course of its final instructions to the jury, the trial court charged in relevant part, as follows:

"THE COURT: Members of the jury, you are trying in this matter two cases. I'm going to try to clarify the issues as best I can for you here, but what I want to say to you first is that in the first instance you are trying the case of Charles A. Mayo and Vincent Corradino versus the House of Pasta, Incorporated. In the second case you are trying the case of House of Pasta, Incorporated, versus Charles A. Mayo and Vincent G. Corradino.

*Quite often in civil cases such as this there is a pleading and then there is an answer and a setoff in counterclaim, so you are only trying one case; however issues arose here between these parties that required the trying of two*

*cases.* I want you to keep that in mind when you go to your room. I'll instruct you a little later on the verdict.

Now as to each plaintiff, in the one case, Mayo is the plaintiff, and in the other case, the House of Pasta is the plaintiff. In several cases such as these the plaintiff has the burden of proving those contentions which entitle him to relief. When a party has the burden of proof on a particular issue, his contention on that issue must be established by a fair preponderance of the evidence.

. . . . .

Now in the first case, that is the one of Mayo and Corradino versus the House of Pasta, they have the burden of proving the following propositions.

. . . . .

The plaintiff contends—both plaintiffs contend—there was such a binding agreement that has been established by the evidence, and upon that they demand redress. The defendants in each case have a different view.

. . . . .

Members of the jury, I spoke to you a little while ago about the burden of proof. Now the suit of Mayo and Corradino against House of Pasta, they have the burden as plaintiffs of proving they are entitled to the following claim which they have testified to, and which you will determine when you go to your jury room.

Testimony was offered whether or not a verbal agreement was made at the time of the written arrangement for the House of Pasta for procuring a beer license. There is testimony both indicating this was agreed to and testimony denying this arrangement likewise. The plaintiffs then discuss other items.

Now those other items are as follows: They are claiming rent from April and May of 1975. That's two months rent or a month and up until May the 22nd. That comes to a figure of twelve hundred and fifty-three dollars. Now here's where you have to make a reconciliation.

The testimony is that they offered to pay that rent I think three days before the end of May, claiming that they had until the end of May to pay it, and then it was refused. *On the other hand the landlords, Mayo and Corradino, claimed they entered a judgment against them, a large judgment, which they are not now trying to collect because that's for the balance of the rent for a long term, and therefore there wasn't a proper tender of that rent.*

You must find out whether there was a tender or wasn't. If there was no proper tender, then the plaintiff would be entitled to the twelve hundred fifty-three dollars. If there was a tender, and it was not accepted, then that would make it a different story.

Now we then get to the rent of January 1st, '76 at two thirty-three a month. Then the next year you remember the new tenant was going to pay an extra hundred dollars. They are claiming thirteen thirty for that. Now you must determine whether, when the lease, the lease says, and you'll have that lease with you when you go out as an exhibit, that if the property becomes untenantable, and obviously it was untenantable if there was serious fire and it isn't repaired in six months, the term is cancelled. If that is the case, then the plaintiff would not be entitled to that—that is Mayo and Corradino would not be entitled to that sum.

Now the sewer charge is a hundred twenty dollars. There was testimony that was due, and the taxes were seventy-nine—that was due. The damage to the building was testified to. It was eleven hundred and fifty dollars. The main claim, of course, is the thirty-one hundred and forty dollars claimed by Mayo and Corradino for that extra hundred dollars, so if you resolve the fact there was to be a hundred dollars paid, which is in dispute as I said, then you can allow that also on the claim of Mayo and Corradino.

Now on the other hand, we get to the claim of House of Pasta. Now theirs is a single item which is fifty-eight hundred and sixty-six dollars and sixty-four cents. Now

they paid that in advance. That was advance rent to secure the lease, I think, the last seven months of the lease. They claim they are entitled to that back because they claimed they didn't breach this contract in any way.

That's for you to determine whether there was a breach or there wasn't. If they didn't breach that contract in any way, shape or form, then you could award that sum or so much thereof as you feel is due. That also applies to the claim of Mayo and Corradino.

The mere fact they say these items are due, like the eleven fifty for the damage to the building and the fifty-eight hundred and sixty-six dollars that the House of Pasta claims, you can award either plaintiff whatever you think is due under those arrangements, or so much thereof as you think they should have...

"Now when you go to your jury room, you'll have two verdict slips. You'll have the verdict slip for Mayo and Corradino against Pasta, and then you'll have a verdict slip of Pasta against Mayo and Corradino. You can find in favor of the plaintiff or in favor of the defendant." (Emphasis added)

At the conclusion of the jury's deliberations, it returned these verdicts:

"THE CLERK: Members of the jury, have you agreed upon a verdict?

THE FOREMAN: We have.

THE COURT: Bring it over, please. (The verdict was handed to the Court.)

THE COURT: All right. Which was the first one? Your case, that was Mayo and Corradino, read this one first and then the other one second, please.

THE CLERK: Members of the jury, harken to the verdict as the court has recorded it in the issue joined wherein Charles A. Mayo and Vincent G. Corradino, the plaintiffs, versus the House of Pasta, Incorporated, the defendant. You say you find in favor of Charles A. Mayo and Vincent G. Corradino and against the House of Pasta,

Incorporated in the sum of five thousand forty-three dollars and thirty-one cents.

And in the second case wherein the House of Pasta, Incorporated, the plaintiff, and Charles A. Mayo and Vincent G. Corradino, the defendants, you say you find in favor of the House of Pasta, Incorporated and against Charles A. Mayo and Vincent G. Corradino in the sum of five thousand eight hundred sixty-six dollars and sixty-four cents. And so say you all?

(The jury responded in the affirmative.)

THE COURT: All right. The verdict is so recorded.

Do counsel have anything they wish to say? No reason to retain this jury any longer.

MR. SHERTZER: [Counsel for Appellees] No, Your Honor."

On July 3, 1978, Appellant filed a motion for Judgment N.O.V. and while the same was pending, the Prothonotary of Lancaster County entered judgment on the verdict in favor of Appellant in the sum of $5,866.64 and costs. On July 12, 1978, Appellees filed a petition to open or strike the judgment entered by the Prothonotary on the verdict, contending that the jury returned a verdict for them on their counterclaim as well as a verdict for the Appellant, and that the Prothonotary failed to "set off" the verdict on the counterclaim against the verdict in favor of Appellant. In their petition, Appellees aver, and Appellant admits in its answer to the Petition, that all evidence presented by Appellees at trial on the Assumpsit Action was in support of Appellees' counterclaim only.

On October 31, 1978, the lower court disposed of Appellees' petition to open or strike the judgment entered on the verdict and Appellant's petition for a new trial and judgment N.O.V. by the following order:

"AND NOW, October 31, 1978 the verdict of the jury to December Term 1975, No. 196, [Assumpsit Action] in which House of Pasta, Inc., has sued Charles A. Mayo and Vincent G. Corradino the verdict is molded as follows: House of Pasta, Inc., vs Charles A. Mayo and Vincent G.

Corradino, in favor of House of Pasta, Inc., the sum of $5,866.64 is stricken and the motions of House of Pasta, Inc., for a New Trial and Judgment N.O.V. are denied and dismissed and judgment is hereby entered in favor of House of Pasta, Inc. and against Charles A. Mayo and Vincent G. Corradino in the sum of $5,866.64 to December Term, 1975, No. 196, and judgment is hereby entered in favor of Charles A. Mayo and Vincent G. Corradino and against House of Pasta, Inc., in the sum of $5,043.31 on their New Matter and Counterclaim to December Term 1975, No. 196.

The Court further orders and directs that the judgment of Charles A. Mayo and Vincent G. Corradino against House of Pasta, Inc., in the amount of $66,953.67 to Confessed Judgment No. 1707–1975 is hereby stricken . . ."

In essence, then, the lower court granted Appellees the relief they sought and set off the verdict Appellees contended was returned in their favor upon their counterclaim.

Appellant contends on appeal that the lower court improperly molded the verdict in its Order of October 31, 1978, and it bases this contention upon the assertion that the jury's verdict in favor of Appellees was not an award upon their counterclaim in the Assumpsit Action, but was rather a verdict in favor of Appellees in the Confessed Judgment Action. Appellees argue, to the contrary, that notwithstanding consolidation of the two actions for trial, no evidence was presented to the jury by either party in the Confessed Judgment Action and the jury was not instructed to return a verdict in that action. Appellees also point to Appellant's admission that no evidence in the Confessed Judgment Action was presented to the jury, as set forth in Appellant's Answer to Appellees' petition to open or strike the judgment on the verdict entered by the prothonotary.

The lower court in an opinion in support of its Order molding the verdict also found that only those claims set forth in Appellees' New Matter and Counterclaim were presented to the jury and that no evidence relating to the

Confessed Judgment Action was elicited at trial. Thus, the Court concluded that no verdict had been returned in the Confessed Judgment Action. We agree and thus affirm.

Appellant's principal argument on appeal of course focuses upon the molding of the verdict by the lower court. In a two-pronged attack, Appellant contends that (1) the Court had no power to mold the verdict as the jury clearly returned two verdicts—one in the Assumpsit Action and the other in the Confessed Judgment Action—and (2) the court molded the verdict to correct what the court misperceived to be a "trial error". Before we examine these contentions in turn, we briefly restate the general principles necessary to the disposition of the issues before us.

■ It is well settled that a trial court in this Commonwealth has the power to mold a jury's verdict to conform to the clear intent of the jury. *Groh v. Philadelphia Electric Company*, 441 Pa. 345, 271 A.2d 265 (1970); *Bitting v. Wolfe*, 368 Pa. 167, 82 A.2d 21 (1951); *Wadatz v. Taormina*, 356 Pa. 481, 52 A.2d 220 (1947); *Pniewski v. Kunda*, 237 Pa.Super. 438, 352 A.2d 462 (1975) 38 *P.L.E.*, Trial, § 394; 6 *Standard Pa. Practice* (Rev.Ed.), Ch. 27, § 72; 1 *Pennsylvania Trial Guide* (Feldman Revision) § 15.5. As we said in *Richards v. Dravo Corp.*, 249 Pa.Super. 47, 375 A.2d 750 (1977):

> "The power of a trial judge to exercise his discretion in molding a verdict to fit the expressed desires of the jury is a cornerstone of the jury system." *Id.*, 249 Pa.Superior Ct. at 58, 375 A.2d at 756

Verdicts which are not technically correct in form but which manifest a clear intent on the part of the jury may be corrected without resort to further jury deliberations or the grant of a new trial. *Rusidoff v. DeBolt Transfer, Inc.*, 251 Pa.Super. 208, 380 A.2d 451 (1977).

■ At the same time, we are reminded that the power of a trial court to mold a verdict is not unlimited, and a verdict may not be molded where the intention of the jury is not obvious, *May v. Pittsburgh Railways Co.*, 209 Pa.Super. 126, 224 A.2d 770 (1966), or where the intention of the jury has

not been expressed at all as when the jury has failed to return a verdict, *Bowie v. Shelton*, 214 Pa.Super. 107, 251 A.2d 667 (1969), or to satisfy the supposed equities of the case, *Interstate Creamery, Inc. v. Reinerth*, 212 Pa.Super. 335, 243 A.2d 451 (1968). Nor may a verdict be molded to express an intention on the part of a jury when the question was never submitted to the jury. *Kardibin v. Associated Hardware*, 284 Pa.Super. 586, 426 A.2d 649 (1981).

■ Stated more simply, the power to mold or more precisely amend a jury's verdict is merely a power to "make the record accord with the facts, or to cause the verdict to speak the truth", 6 *Standard Pennsylvania Practice, supra,* Ch. 27, § 72 at 568, and not a power to enable a judge to invade the province of the jury. *Richards v. Dravo Corp., supra.*

■ In order to apply these principles to the case before us, we have examined the record of the trial, and all of the documents filed in the Assumpsit Action and the Confessed Judgment Action, in consummate detail, and it is obvious to us, as it was to the court below, that not a single word of testimony or evidence of any kind was presented to the jury concerning the subjects of the Confessed Judgment Action. It is equally apparent that the charge of the court did not submit the issues raised in the Confessed Judgment Action to the jury for consideration.[1]  In such circumstances, the

1. We note, for example, the following dialogue between the lower court and Appellant's counsel, out of the presence of the jury and at the conclusion of the trial:
    "MR. SHERTZER: I will offer in evidence paragraph three of the petition to open or strike judgment in Mayo et al versus House of Pasta, Incorporated, to confessed judgment, 1975, number 1707 which reads (reading:) that on May 27, 1975, the plaintiffs, by their attorney, David S. Wedge, Esquire, filed a complaint for entry of judgment against the defendant by confession in ejectment of said premises and for the sum of sixty-six thousand nine hundred fifty-three dollars and thirty-four cents alleged by the plaintiffs to be due as rent. (End of reading.)
    Paragraph three of plaintiff's answer reads (reading:) on May 27th, 1977, the plaintiffs, by their attorney, David F. Wedge, Esquire, filed the complaint alleged in defendant's petition. (End of reading.)

jury could certainly have expressed no "intention" as to the issues in the Confessed Judgment Action and to have permitted a verdict upon those issues to have remained recorded would have constituted clear error. *Kardibin v. Associated Hardware, supra. And compare Bowie v. Shelton, supra.* It is apparent from the court's ruling and its emphasized remarks that the court did not consider the pleadings in the Confessed Judgment Action to be in any manner related to the case on trial.

It will be recalled that the lower court at the outset of its charge to the jury, said:

"THE COURT: Members of the jury, you are trying in this matter two cases. I'm going to try to clarify the issues as best I can for you here, but what I want to say to you first is that in the first instance you are trying the case of Charles A. Mayo and Vincent Corradino versus the House of Pasta, Incorporated. In the second case you are trying the case of House of Pasta, Incorporated, versus Charles A. Mayo and Vincent G. Corradino.

Quite often in civil cases such as this there is a pleading and then there is an answer and a setoff in counterclaim, so you are only trying one case . . ."

It is clear to us that although the court spoke of two cases, it was in reality endeavoring to explain in simplified form the nature of a complaint and a counterclaim filed in response thereto. Our view is reinforced upon reviewing the contentions of the parties as stated by the court in the charge. As one such example, Appellees in their counterclaim sought to recover rental only for the months of April

I offer that in evidence.
THE COURT: Denied. I'll refuse it. Exception noted.
MR. SHERTZER: I'll also offer, since this is an admission, from the House of Pasta, Incorporated versus Mayo, et al, number 196, September Term, 1975, paragraph six of the complaint.
(Reading:) In accordance with the aforesaid provision, plaintiff did pay to defendant the sum of five thousand eight hundred sixty-six dollars and sixty-four cents. (End of reading.)
And from the answer thereto, it was admitted.
THE COURT: I'll admit that because those are the pleadings. You admit that and I'll admit that. They paid the fifty-eight hundred dollars." (N.T. 288–89)

and May, 1975. Addressing this claim in its charge, the court said:

"They are claiming rent from April and May of 1975. That's two months rent or a month and up until May the 22nd. That comes to a figure of twelve hundred and fifty-three dollars. Now here's where you have to make a reconciliation.

The testimony is that they offered to pay that rent I think three days before the end of May, claiming that they had until the end of May to pay it, and then it was refused. On the other hand the landlords, Mayo and Corradino, claimed they entered a judgment against them, a large judgment, which they are not now trying to collect because that's for the balance of the rent for a long term, and therefore there wasn't a proper tender of that rent.

In the Confessed Judgment Action, however, Appellees are seeking not only the rental for April and May, 1975, but also rental assertedly due for the balance of the lease term, or the total sum of nearly $61,000.00.

The Court continued in its charge to carefully review each of the claims set forth in Appellees' counterclaim, but not once did the court speak or allude to the question of whether Appellees were entitled to receive rental for the remainder of the term—the subject of the Confessed Judgment Action. In response to the charge upon the claims in the complaint and the counterclaim, the jury returned two verdicts, as it was instructed to do.

We also observe from the record that the verdict returned by the jury in favor of Appellant was recorded by the jury itself on a verdict slip properly bearing the caption of the Assumpsit Action, but the verdict in favor of Appellees was recorded on a verdict slip bearing the caption of the Confessed Judgment Action.[2] We do not find this error significant, and note that a trial court in this Commonwealth has the power to mold or amend a verdict to correct a mistake or to put it into proper form in accordance with the law. *Bu-*

2. The captions had been typewritten and were obviously prepared in advance of trial by a court clerk.

*checker v. Reading Co.*, 271 Pa.Super. 35, 412 A.2d 147 (1979) (Jury mistakenly reversed awards in a wrongful death and survival action; trial court properly corrected mistake); *Longberry v. Paul*, 205 Pa.Super. 435, 211 A.2d 107 (1965) (Jury awarded husband plaintiff $3,000.00 for loss of consortium in case in which wife plaintiff, also an additional defendant, was found negligent; as husband plaintiff was not entitled as a matter of law to recovery for loss of consortium due to injuries to wife plaintiff when such injuries were contributed to by her own negligence, trial court properly molded verdict by deleting the $3,000.00 award for loss of consortium). *And see* 1 *Pennsylvania Trial Guide* (Feldman Revision), *supra*, § 15.5 (collects cases).

Finally, we have obtained the record in the Confessed Judgment Action and find from an examination of the multiplicity of pleadings filed in that case, and the deposition testimony, that the issues in the case were indeed strenuously contested by the parties and it cannot be rationally suggested that Appellees' claim, then reduced to judgment in the aforesaid sum of nearly $70,000.00 and ultimately opened by the trial court[3], would be abandoned at trial.

In sum, we conclude that as the jury was unaware of the issues framed in the Confessed Judgment Action, heard no testimony and considered no evidence on those issues, and received no instructions thereon, it clearly returned a verdict only upon Appellant's claim as set forth in the complaint in the Assumpsit Action, and upon Appellees' claims as set forth in their counterclaim filed in the Assumpsit Action. The court properly molded the verdict to reflect the jury's obvious intention.[4] *Rusidoff v. DeBolt Transfer, Inc., supra.*

**3.** In its Order of October 31, 1978 molding the verdict, the lower court granted Appellant's petition to strike Appellees' judgment. That part of the Court's order is not a subject of the within appeal.

**4.** Appellant also contends that the lower court had no authority to grant Appellees relief by molding the verdict as Appellees had failed to except to the charge of the court, had failed to object to the verdicts when returned by the jury, and had failed to file post trial motions, thereby waiving the issue. As it was apparently as clear to Appellees as it is to us that the court did not instruct the jury upon

Appellant in its Brief alludes to four additional issues. We address them briefly as does Appellant. Appellant first contends that Appellees introduced into evidence a written addendum to the lease, subsequently executed, which permitted Appellant to sell alcoholic beverages. Although the addendum did not require Appellant to pay increased rental, the trial court permitted Appellees to testify over objection that Appellant orally agreed to pay additional rental as to have included that term would in Appellees' view have violated the Liquor Code.[5] Appellant contends that permitting Appellees to testify to the oral aspect of the addendum violated the parol evidence rule and permitted Appellees to thereby vary the terms of the written lease.

It is axiomatic that the parol evidence rule, which prohibits the admission of oral evidence to vary or contradict a written contract simply does not apply to or prohibit a subsequent modification of a written contract "by writings or by words or by conduct or by any combination of these". *Levicoff v. Richard I. Rubin and Co.*, 413 Pa. 134, 141, 196 A.2d 359, 362 (1964); *McBride v. Davis*, 266 Pa.Super. 125, 403 A.2d 125 (1979) (collects cases).

As Appellant's last three assignments of error, it contends that it was prejudiced when the lower court permitted the pleadings in an unrelated suit between Appellant and its insurance carrier to go to the jury, as Appellant's carrier asserted in its answer to Appellant's complaint that Appellant intentionally set fire to the property; that the court erroneously permitted Appellees to recall a witness during

any of the issues germane to the Confessed Judgment Action, Appellees had no reason or basis to except to the charge or object to the verdicts as returned by the jury. Finally, contrary to Appellant's assertion, the record does reveal that Appellees did timely file a motion for judgment N.O.V. in the Confessed Judgment Action, and a few days thereafter, a petition to open or strike the judgment entered by the Prothonotary in the Confessed Judgment Action. We thus find no waiver.

5. Act of 1951, P.L. 90, art. I, §§ 101, *et seq.*, as amended, 47 P.S. §§ 1–101, *et seq.*

the presentation of Appellant's case and then compounded the error by refusing to permit Appellant's counsel to cross examine the witness; and that the lower court permitted several photographs to go to the jury that had not been otherwise identified during the course of the trial.

Although, again, generally asserting prejudice, Appellant has failed to articulate the manner in which its case was prejudiced. We have carefully examined the record in the context of Appellant's assertion and find no prejudice whatever.[6] Although we may well conclude that the admission of the photographs without a proper foundation was error, and that the contents of the pleadings in the earlier litigation between Appellant and its insurance carrier were irrelevant, we are reminded that error in the abstract is not an adequate reason to afford relief and before we may grant relief we must conclude that trial errors led to an incorrect result. *Warren v. Mosites Construction Company*, 253 Pa.Super. 395, 403, 385 A.2d 397, 401 (1978). We are unable to draw such conclusion in the face of the fact that the verdict returned in favor of Appellant was precisely the sum it sought in its complaint, and the verdict in favor of Appellees was in an amount substantially less than they sought to recover at trial.

Affirmed.

SPAETH, J., files a concurring statement.

SPAETH, Judge, concurring:

I agree that we should affirm. I assume that it is understood that the order of the lower court striking the judgment in the confessed judgment action was with prejudice, so that the entire matter is now concluded.

6. "Prejudice" does not mean "detrimental to a party's case" but rather "an undue tendency to suggest decision on an improper basis". *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Super. 230, 243, 433 A.2d 40, 47 (1981).