Scott **MENDRALLA** and Laura
Mendralla, His Wife,
Appellants (at 1776),

v.

**WEAVER CORPORATION**, a Subsidiary of Walter Kidde & Company, Inc.; New Paris Acquisition Corporation, now by Change of Name, New Paris Creamery Company, Inc., New Paris Liquidation Corporation; Weaver Corporation; Dura Corporation; Dover Corporation; Walter Kidde & Company, Inc.; Rotary Lift Company; Petroleum Equipment, Inc., a/k/a Petroleum Equipment & Maintenance Company; and Doe Corporation, Appellees.

Scott **MENDRALLA** and Laura
Mendralla, His Wife,
Appellees,

v.

**WEAVER CORPORATION**, a Subsidiary of Walter Kidde & Company, Inc.; New Paris Acquisition Corporation, now by Change of Name New Paris Creamery Company, Inc., New Paris Liquidation Corporation; Weaver Corporation; Dura Corporation; Dover Corporation; Walter Kidde & Company, Inc.; Rotary Lift Company; Petroleum Equipment, Inc., a/k/a Petroleum Equipment & Maintenance Company; and Doe Corporation.

Appeal of **WEAVER CORPORATION** (at 1718).

Superior Court of Pennsylvania.

Argued Sept. 3, 1997.
Filed Nov. 18, 1997.

James T. Marnen, Erie, for Mendralla.

Thomas S. Talarico, Erie, for Weaver, etc.

Before McEWEN, President Judge, and CAVANAUGH, DEL SOLE, BECK, TAMILIA, KELLY, HUDOCK, EAKIN and SCHILLER, JJ.

HUDOCK, Judge:

This case calls upon our Court to clarify the circumstances under which a trial court may, rather than awarding a new trial, mold a verdict to reflect the jury's intent. After careful deliberation, we hold that in cases in which liability is free from doubt and the jury's intent may be clearly discerned from the verdict, a trial court may, at its discretion, mold the verdict.

On August 24, 1987, while working as a rustproofer for Pro–Tech, Inc., Scott Mendralla was severely injured when a vehicle under which he was working fell from a hydraulic lift. As a consequence of this acci-

dent, Mr. Mendralla and his wife, Laura, commenced the instant action by filing a praecipe for a writ of summons in the Court of Common Pleas of Erie County. At that time, ten defendants were named as possible manufacturers and/or distributors of the lift.

After conducting an extensive pretrial investigation into the identity of the lift's manufacturer, the case proceeded to trial against only one defendant, Weaver Corporation (Weaver). Prior to trial, Weaver signed a stipulation that it was the successor-in-interest to the manufacturer of the lift. Mr. Mendralla's case was premised upon strict product liability, while Mrs. Mendralla's claim averred loss of consortium.

At the close of testimony, but before the jury was charged, the Mendrallas presented the court with a proposed itemized verdict slip. Included as a possible category of damages, should the jury find Weaver liable, was an award for future medical expenses. Asserting that insufficient evidence was proffered at trial relative to the amount of Mr. Mendralla's future medical expenses, Weaver objected to both the proposed jury charge and verdict slip. The court, however, overruled Weaver's objection, charged the jury on future medical expenses and submitted the Mendrallas' verdict slip to the jury.

Following deliberations, the jury returned its verdict in which it found that, at the time it was sold, the lift was in a defective condition and was unsafe for its intended use. Weaver was, therefore, found liable in the gross amount of $125,000.00, $50,000.00 of which was awarded to Mr. Mendralla for his future medical expenses. No award was given to Mrs. Mendralla for her loss of consortium claim.

Asserting, *inter alia*, that the trial court erred in permitting the jury to consider Mr. Mendralla's future medical expenses as part of its damage award, Weaver filed a timely post-verdict motion. Therein, Weaver reiterated its prior argument that insufficient evidence was adduced at trial to prove Mr. Mendralla's future medical expenses with

specificity. As a result, Weaver claimed, the damages awarded by the jury were speculative. Additionally, requesting a new trial or judgment notwithstanding the verdict, Weaver argued that the totality of evidence presented at trial was insufficient to prove liability. Mr. Mendralla, in turn, filed a post-trial motion for delay damages.

By order dated August 15, 1995, the trial court denied Weaver's motion for a new trial or judgment notwithstanding the verdict. The court, however, agreed with Weaver that the issue of future medical expenses was improperly submitted to the jury and, thus, reduced the aggregate damage award by $50,000.00. Mr. Mendralla's motion for delay damages was granted as well and, on September 1, 1995, judgment was entered against Weaver in the aggregate amount of $105,717.14.

On September 13, 1995, Weaver filed a timely notice of appeal to this Court claiming, again, that the evidence was insufficient to sustain the jury's verdict. In support of its claim, Weaver stated, *inter alia*, that it did not sell the defective lift but was, instead, the successor corporation to the actual manufacturer/distributor. Therefore, Weaver argued, because it did not actually sell the lift and because the Mendrallas did not plead successor liability in their complaint, it could not be found liable.

On September 22, 1995, the Mendrallas filed a cross-appeal claiming that the trial court erred in reducing the damage award by the amount allocated for Mr. Mendralla's future medical expenses. Rather, the Mendrallas' claimed, the trial court should have awarded a new trial.

■ Prior to addressing the Mendrallas' claim as to whether the trial court fashioned the appropriate post-verdict remedy, we will review Weaver's averment that the evidence introduced at trial was insufficient to establish liability because it did not actually sell the lift to Mr. Mendralla's employer.[1] In so

---

1. As previously stated, along with this sufficiency argument, Weaver alleges that it cannot be found liable because the Mendrallas failed to plead successor liability in their complaint. Our re-

view, however, demonstrates that, in addition to the specifically named defendants, the Mendrallas alleged that a "Doe Corporation" was liable either in its own capacity or as the successor-in-

doing, we must view the evidence in the light most favorable to the Mendrallas, as verdict winners, and determine whether sufficient evidence was proffered at trial to prove that Weaver is strictly liable for Mr. Mendralla's injuries.

■ As a general rule, a successor corporation does not acquire the liabilities and/or debts of its predecessor. *See, e.g., Leffler v. Hutter*, 696 A.2d 157, 167 (Pa.Super.1997). As with all generalities, however, there are exceptions to this rule which, if present, will result in a successor corporation being held liable for its predecessor's liabilities. *Id.*

■ One such exception provides that liability will transfer to a successor corporation which has either expressly or impliedly agreed to assume its predecessor's liabilities. *Id.* Additionally, with respect to tort claims sounding in strict liability, a successor corporation will be responsible for its predecessor's liabilities if the successor undertakes to conduct the same manufacturing operations as the predecessor's product line. *Id.* "The successor is then strictly liable for injuries caused by defects in the product line, even if previously manufactured and distributed by the transferor." *Childers v. Power Line Equipment Rentals*, 452 Pa.Super. 94, 681 A.2d 201, 212 (1996) (quoting *Simmers v. American Cyanamid Corporation*, 394 Pa.Super. 464, 482, 576 A.2d 376, 386 (1990)).

■ As previously related, prior to trial Weaver signed a stipulation that it was the successor-in-interest to the manufacturer of the automotive lift which fell upon Mr. Mendralla. The lift was originally manufactured

by Paris Acquisition Corporation (Paris) which, in August of 1982, sold the lift to Mr. Mendralla's employer.

In June of 1983, Paris merged with Weaver Corporation (Weaver (Michigan)). As a result of this merger, Weaver (Michigan) succeeded to all of Paris' liabilities. Specifically, Weaver (Michigan) assumed responsibility for any product liability attributable to the design, manufacture, marketing, distribution or sale of Paris' lifts. Thereafter, Weaver (Michigan) merged with Weaver (Delaware) which, again, specifically assumed Weaver (Michigan)'s liabilities. Both Weaver (Michigan), prior to the merger, and Weaver (Delaware) conducted business from the same Paris, Kentucky, plant where Paris originally operated. Additionally, both Weaver corporations undertook essentially the same product line manufacturing as Paris, their predecessor corporation. The Weaver Corporation involved in the instant litigation is Weaver (Delaware).

■ At trial, the Mendrallas' expert witness, Kenneth Fisher, testified that, in his opinion, there were three defects in the lift. Two of these defects, unrestricted arm rotation and excessive swivel pad tilt, related to the lift's design. The third defect identified by Mr. Fisher was the failure to adequately warn of the lift's dangerous characteristics and the hazards they presented. Moreover, the Mendrallas presented evidence that, due to similar past accidents, Weaver changed the lift's design prior to Mr. Mendralla's accident but failed to take additional necessary precautions such as sending prior purchasers retrofit kits.[2]

interest to the lift's actual manufacturer. *See* Mendralla Complaint, at paragraph 24. Moreover, as previously stated, Weaver stipulated prior to trial that it was the successor corporation to the lift's manufacturer. Based upon this evidence, we reject Weaver's present claim.

**2.** Weaver alleges that evidence concerning the lift's design change, as well as the prior accidents which precipitated such change, were wrongfully admitted. With respect to the design change, we hold that the evidence was both relevant and probative to establish knowledge of a dangerous propensity, as well as the feasibility of an alternate design. *See, e.g., Walton v. Avco Corp.*, 530 Pa. 568, 576–78, 610 A.2d 454, 459 (1992) (Manufacturer must take reasonable steps to warn the

product's ultimate purchaser of dangerous defects discovered after the sale). Moreover, it is well established that evidence of past similar accidents may be admissible to demonstrate, *inter alia*, that a product was unsafe or that a defendant had actual or constructive knowledge of a dangerous condition. Weaver's present allegation, that the past accidents were not factually similar, is belied by the record and contravenes controlling precedent. Accordingly, we hold that the trial court properly admitted the evidence. *See, e.g., DiFrancesco v. Excam, Inc.*, 434 Pa.Super. 173, 185–90, 642 A.2d 529, 535–37 (1994) (evidence of accidental gun discharges involving a pistol other than the model at issue were substantially similar to show that collision with another object would cause inadvertent discharge).

As a whole, we find that this evidence amply supports the jury's determination that, as the admitted successor-in-interest to the lift's manufacturer, Weaver was strictly liable for the injuries sustained by Mr. Mendralla. We note as well that, in addition to the applicability of the product-line exception to the general rule proscribing a successor corporation's liability, Weaver expressly assumed Paris' liabilities. Thus, Weaver could be found liable on this basis independently. *See Leffler, supra.* As such, the jury's liability verdict was entirely proper and Weaver's sufficiency argument must fail.[3]

We now turn to the Mendrallas' argument that the trial court erred in molding the jury verdict rather than granting a new trial. To begin, we note that the decision whether to grant a new trial, in whole or in part, rests in the sound discretion of the trial court. *See, e.g., Nogowski v. Alemo–Hammad,* 456 Pa.Super. 750, 691 A.2d 950, 954 (1997) *(en banc)*. Absent a finding that the court either abused its discretion or committed an error of law, this Court will defer to the decision of the trial court. *Id.*

As previously stated, the trial court in the instant matter permitted the jury to consider whether Mr. Mendralla was entitled to recover expenses for his future medical services. This determination was, however, in error.

It is well-settled that "[a]n item of damage claimed by a plaintiff can properly be submitted to the jury only where the burden of establishing damages by proper testimony has been met." *Cohen v. Albert Einstein Medical Center,* 405 Pa.Super. 392, 410, 592 A.2d 720, 729 (1991). In the context of a claim for future medical expenses, the movant must prove, by expert testimony, not only that future medical expenses will be incurred, but also the reasonable estimated cost of such services. *Id. See also, Berman*

*v. Philadelphia Board of Education,* 310 Pa.Super. 153, 161–65, 456 A.2d 545, 550–51 (1983). Because the estimated cost of future medical services is not within the layperson's general knowledge, the requirement of such testimony eliminates the prospect that the jury's award will be speculative. *Cohen,* 405 Pa.Super. at 410–11, 592 A.2d at 729.

As applied to the instant matter, it is plain that the Mendrallas failed to sustain their burden of proof at trial and, therefore, that the jury should not have been permitted to award damages for Mr. Mendralla's future medical expenses. At trial, two physicians and a dentist testified that Mr. Mendralla suffered permanent injury as a result of the accident and that, in all likelihood, future procedures and reconstructive surgeries would be needed. There was, however, no testimony as to the estimated or actual cost of these anticipated medical services. In the absence of expert testimony as to the reasonable amount of Mr. Mendralla's future medical expenses, it was error for the court to permit the issue to be submitted to the jury. *See, e.g., Cohen, Berman, supra.*

Having determined, as did the trial court, that the jury should not have been permitted to award damages for Mr. Mendralla's future medical expenses, we must now consider whether the court fashioned an appropriate remedy. As stated, the trial court denied Weaver's request for a new trial, opting instead to mold the verdict by striking that portion of the jury award relating to future medical expenses.

"It is well settled that a trial court in this Commonwealth has the power to mold a jury's verdict to conform to the clear intent of the jury." *Mitchell v. Gravely International, Inc.,* 698 A.2d 618 (Pa.Super.1997) (quoting *House of Pasta, Inc. v. Mayo,* 303 Pa.Super. 298, 307, 449 A.2d 697,

---

3. Weaver also presents a number of issues regarding the propriety of the trial court's jury instructions. When reviewing such a challenge, this Court must view the charge as a whole to determine whether the court accurately conveyed the controlling law. *See, e.g., Wagner v. Anzon, Inc.,* 453 Pa.Super. 619, 631–34, 684 A.2d 570, 576–77 (1996). In this regard, there are no talismanic words which must be utilized. *Id.*

Therefore, the court does not have to give a party's alternate or additional requested point for charge if it would be inaccurate, confusing or merely cumulative. *Id.* With this standard in mind, we have reviewed the court's charge and find no error. As a whole, the charge adequately and accurately reflected our controlling precedent.

701 (1982)). The rationale supporting this discretion is that "[v]erdicts which are not technically correct in form but which manifest a clear intent on the part of the jury may be corrected without resort to further jury deliberations or the grant of a new trial." *House of Pasta,* 303 Pa.Super. at 307, 449 A.2d at 701.

While a trial court has discretion in deciding whether to mold a verdict, it must nonetheless adhere to the principle that a verdict may only be molded where the intention of the jury is clear. As this Court as previously held, "[w]here the intention of the jury is far from obvious, the verdict should be returned to the jury for further deliberations or a new trial should be granted." *Krock v. Chroust,* 330 Pa.Super. 108, 116, 478 A.2d 1376, 1380–81 (1984).

In the instant matter, the court submitted to the jury, upon the Mendrallas' request, an itemized verdict slip. This verdict slip, which was specific as to both liability and damages, was filled out by the jury and returned as follows:

### VERDICT SLIP

1. Did the automotive lift lack any element necessary to make it safe for its intended use at the time it was sold?

Yes x No ___

If your answer to question one is "yes," go to question 2. If your answer to question 1 is "no," inform the tipstaff that you have reached a verdict.

2. Was the lack of any element necessary to make the lift safe a substantial factor in bringing about Scott Mendralla's injuries?

Yes x No ___

If your answer to question 2 is "yes," go to question 3. If your answer to question 2 is "no," inform the tipstaff that you have reached a verdict.

3. What is the total dollar amount of your verdict?

Scott Mendralla's

| | | |
|---|---|---|
| A. | Past medical expenses | $ 58,079.17 |
| B. | Past lost wages | $ 8,109.70 |
| C. | Past pain and suffering | $ 2,000.00 |
| D. | Future pain and suffering | $ 2,000.00 |
| E. | Disfigurement | $ 4,911.13 |
| F. | Future medical expenses | $ 50,000.00 |

Laura Mendralla's

| | | |
|---|---|---|
| A. | Loss of consortium | $ –0– |

TOTAL . . . . . . . . . . . . . . . . . . . . . . .$125,000.00

Inform the tipstaff that you have reached a verdict.

Date: 6/19/95 /s/ _____
 Foreperson

A plain reading of the verdict slip in the instant matter leads to the conclusion that the jury's intent was clear and free of doubt. Thus, the trial court's decision to reduce the total verdict by $50,000.00, the amount impermissibly awarded for future medical expenses, was a proper exercise of discretion. *See Mitchell, supra.*

This would not be the case had the jury returned a general damages verdict against Weaver. In that case, the trial judge would have had to speculate as to what portion of the total damage award represented that subset erroneously submitted to the jury. The intention of the jury would, thus, be "far from obvious" and the proper post-verdict remedy would have been a new trial. *See Krock, supra.*

While acknowledging that molding a jury verdict is sometimes an appropriate remedy, the Mendrallas argue that, as applied to the instant matter, the remedy was unwarranted. In support of this averment, the Mendrallas state that, while the liability portion of the verdict was free from doubt, the damages apportionment represented an impermissible compromise. Thus, the Mendrallas argue, the court should have awarded a new trial.

"A compromise verdict is one where the jury, in doubt as to the defendant's negligence or plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would have if these questions had been free from doubt." *Kiser v. Schulte,* 538 Pa. 219, 233, 648 A.2d 1, 8 (1994). In support of their argument that the jury must have impermissibly apportioned liability, in part, to Mr. Mendralla, the Mendrallas cite to the fact that the jury award for past pain and suffering, $2,000.00, was far less than Mr. Mendralla's past medical expenses. Therefore, the argument con-

tinues, the verdict should have been accepted as a $125,000.00 general verdict.

This rather amorphous argument is troublesome for several reasons. First, we find unpersuasive the Mendrallas' attempt to correlate a past pain and suffering award with evidence of past medical expenses. A cursory reading of the itemized verdict slip reveals that the jury, as per the verdict slip provided by the Mendrallas, awarded separate damages for past medical expenses and past pain and suffering. Further, the past medical expenses award of $58,079.17 represents the exact amount claimed by the Mendrallas at trial. It is, therefore, plain that Mr. Mendralla received full compensation in this regard.

We now address the argument that the trial court should have accepted the total damage award as a general verdict of $125,-000.00. In support of this proposition, the Mendrallas claim that "[c]learly the jury decided to award Plaintiff the sum of One hundred twenty-five thousand ($125,000.00) Dollars, only then did it assign a specific amount to the categories listed in the verdict slip." Mendrallas' Brief at 40.

At the outset, we remind the Mendrallas that it was they who drafted the itemized verdict slip and that it was submitted to the jury over Weaver's adamant objection. Further, we find that the six detailed damages amounts awarded to Mr. Mendralla belie the argument that the jury decided on a general award and then capriciously allocated it among the various categories. On the contrary, the specificity of the diverse awards supports the proposition that the jury carefully considered each potential damages category and then awarded an amount which it considered sufficient to compensate Mr. Mendralla for his losses.

 In the alternative, the Mendrallas argue that the verdict was wholly inadequate to compensate them and that the verdict, therefore, should have been set aside and a new trial, limited to damages, should have been granted. In reviewing this claim, we are reminded that the decision "whether to grant a new trial because of excessiveness

or inadequacy of the verdict is a matter within the sound discretion of the trial court, which has observed the demeanor of the witnesses." *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 165, 611 A.2d 1174, 1176 (1992). Absent a gross abuse of that discretion, or an error of law which controlled the outcome of the case, the decision of the trial court will not be disturbed. *Id.* See also, *Nudelman v. Gilbride*, 436 Pa.Super. 44, 49–53, 647 A.2d 233, 236–37 (1994).

 So long as the verdict reached by the jury bears a reasonable resemblance to the proven damages, a court may not alter the award. *See, e.g., Catalano v. Bujak*, 148 Pa.Commw. 269, 277, 611 A.2d 314, 318 (1992) ("In order to support the granting of a new trial for inadequacy, 'the injustice of the verdict should stand forth like a beacon.'")(quoting *Elza v. Chovan*, 396 Pa. 112, 118, 152 A.2d 238, 241 (1959)). Thus, a new trial may not be granted merely because the jury could have awarded greater damages. Instead, the movant must demonstrate that the verdict reached was palpably and grossly inadequate. *Id.* As this Court long ago held, "[t]he mere fact that the court below would have been more generous to [the plaintiff] does not justify ousting the jurors and moving into their seats." *Morris v. Peckyno*, 202 Pa.Super. 490, 493, 198 A.2d 396, 397 (1964) (*en banc* ).

 Our review of the record demonstrates that the jury's verdict, which amounted to $75,000.00 after molding, bears a reasonable relation to Mr. Mendralla's proven damages. Mr. Mendralla was fully compensated for his past medical expenses and lost wages. Additionally, the jury made allotments for past and future pain and suffering as well as disfigurement. While these amounts certainly **could** have been greater, there is no evidence to support that they **should** have been greater. Accordingly, the Mendrallas' argument in this regard must fail. *See Morris, supra* (verdict may be set aside when it is so inadequate as to indicate passion, prejudice, partiality or corruption or where the jury disregarded the instructions of the court).[4]

---

4. In conjunction with this claim, the Mendrallas argue that consideration must be given to the

In sum, we hold that, because the issue of liability was free from doubt and the impermissible portion of the damages award was clearly identifiable from the itemized verdict slip, the trial court properly molded the verdict to reflect the jury's intent. As such, the judgment of the trial court is affirmed.

Judgment affirmed.

McEWEN, President Judge, files a dissenting statement in which DEL SOLE, J., joins.

TAMILIA, J., files a concurring and dissenting statement.

TAMILIA, Judge, concurring and dissenting:

I join the majority Opinion as to liability but would grant a new trial as to damages.

McEWEN, President Judge, dissenting:

While I am hesitant to differ with so astute a jurisprudential analysis as provided by the author of the majority view, a recitation of the dollar amount of the specific items of damages awarded by the jury compels me to the conclusion that the verdict was a compromise verdict. Interrogatory # 3 of the verdict slip inquired: "What is the total dollar amount of your verdict?", and the jury responded:

Scott Mendralla's

| | | |
|---|---|---|
| A. | Past medical expenses | $ 58,079.17 |
| B. | Past lost wages | $ 8,109.70 |
| C. | Past pain and suffering | $ 2,000.00 |
| D. | Future pain and suffering | $ 2,000.00 |
| E. | Disfigurement | $ 4,911.13 |
| F. | Future medical expenses | $ 50,000.00 |

Laura Mendralla's

| | | |
|---|---|---|
| A. | Loss of consortium | $ –0– |
| | TOTAL .....................| $125,000.00 |

The award of a figure for future medical expenses which so nearly mirrors the figure for *actual* medical expenses, in view of the ever so minimal awards for past and future pain and suffering, and in the light of no possible evidentiary basis for such an award,

convinces me that the jury verdict was the result of a compromise.

Moreover, certain conclusions follow upon my study of this appeal:

The need for future medical attention of the severe and painful injuries of Scott Mendralla was evident from the testimony of Mr. Mendralla as well as his physicians. There was no testimony as to reasonable costs of such future medical procedures and treatment.

The claim for future medical expenses should not have been submitted to this jury and it was error to do so.

The error was certainly not viewed as harmless *prior* to the verdict because it exposed appellee to a category of damages which the evidence had not made viable. Nor can the error be viewed as harmless *subsequent* to the verdict since the trial court—and now this Court—in an effort to adjust the error, has erased 40% of the total award.

Thus, I am unable to agree that adjustment of the error should be restricted to erasing the amount awarded for future medical expenses only and I would, instead, award a new trial upon all issues. While it can be quite persuasively argued that a new trial should be restricted to the issue of damages since a jury has already considered and decided the issue of liability—a conclusion which has survived the scrutiny of both the trial court and this court—such a restricted retrial would be unfair to appellee because it was appellant who triggered the trial error by an insistence that the trial court permit the jury to award a sum for future medical expenses even though appellant had failed to present evidence of such expenses.

DEL SOLE, J., joins in this dissenting statement.

---

fact that the jury awarded no damages to Mrs. Mendralla for her loss of consortium claim. This Court has previously held that, while loss of consortium claims are commonly appended to personal injury tort claims, they are, nonetheless, separate and distinct causes of action. Further,

"damages for loss of consortium have no market value, and the amount awarded for loss of consortium is left to the sound judgement and common sense of the jury." *Nudelman,* 647 A.2d at 239.