J-S20016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOSEPH MARTINI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ADAM ROCCO, ROCCO MIXED MARTIAL ARTS, INC., AND PHILLY'S NEXT CHAMP, LLC. | |
| Appellants | No. 2230 EDA 2019 |


APPEAL OF: ADAM ROCCO


Appeal from the Order Entered June 11, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No: February Term, 2017 Case No. 170104922


BEFORE:  SHOGAN, J., STABILE, J. and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 23, 2020**

Appellant, Adam Rocco (Rocco), appeals from the June 11, 2019 order entered in the Court of Common Pleas of Philadelphia denying his motion for post-trial relief, entering judgment on the jury's verdict, and severing provisions of an agreement of sale.  Following considered review, we affirm in part, reverse in part, and remand.

The trial court summarized the factual and procedural background of this case as follows:

> [Appellee] Joseph Martini [(Martini)] sought to recover . . . a judgment in the amount of $68,121 which he had received in an earlier action against [] Rocco Mixed Martial Arts Inc. (RMMA),

together with attorney's fees of $1,500.  The present action was to set aside a fraudulent transfer between RMMA and [Rocco], and to pierce the corporate veil of RMMA.  Rocco was the majority shareholder, principal, and manager of RMMA.  Alternatively, [Martini] sought to set aside the sale of RMMA to [Appellee] Philly's Next Champ LLC (PNC), or to impose successor liability upon PNC based upon the agreement of sale, or the theory of de facto merger.

This action arose out of an earlier action filed on May 22, 2015, by [Martini] against RMMA for breach of contract, breach of oral contract, and restitution . . . ("the first case").  During that litigation RMMA was twice sanctioned for failing to provide discovery and [Martini] was awarded $1,000 in attorney's fees.  RMMA continued to fail to provide discovery.  On May 31, 2016, the court issued an order precluding RMMA from introducing testimony or documents at the trial, and requiring RMMA to pay an additional $500 in attorney's fees.

On June 15, 2016, Rocco sold RMMA to PNC for $65,000.  Kathleen Mizia (Ms. Mizia) signed the agreement of sale on behalf of PNC.  Ms. Mizia is the sole shareholder of PNC.  Of significant import is paragraph 12 of the agreement of sale in which Ms. Mizia crossed out language that stated that the buyer did **not** assume any of the liabilities of RMMA[.]

. . . .

Ms. Mizia and Rocco initialed both changes and dated them "6-15-16."  Ms. Mizia's attorney had drafted the agreement of sale, including the language she struck.

RMMA never enjoyed any of the proceeds from the sale.  On June 20, 2016, Rocco withdrew $65,000 from RMMA's bank account and deposited it into his personal bank account.  The jury in the present case found that RMMA did not receive any consideration from Rocco for the transfer of the $65,000.  RMMA was left in an insolvent condition.

Trial Court Opinion, 8/11/19, at 1-2 (emphasis in original; references to notes of testimony and some capitalization omitted).

RMMA did not appear for trial in the first case, resulting in a verdict in favor of Martini in the amount of $68,121, plus $1,500 in attorney fees that had been awarded as sanctions. The verdict was reduced to judgment and RMMA did not file an appeal.

Martini initiated the instant action on February 3, 2017 against Rocco, RMMA, and PNC seeking, alternatively, to set aside the corporate existence of RMMA and require Rocco personally to pay Martini $69,621; post-judgment interest, punitive damages, and attorney fees incurred in the instant litigation; an order directing PNC to pay the judgment as a successor company; an order setting aside the transfer of $65,000 from RMMA to Rocco and requiring Rocco to return the funds to RMMA so Martini could execute on the judgment; and/or an order setting aside the transfer from RMMA to PNC so Martini could execute on the funds received by RMMA.[1]

On March 28, 2017, a default judgment was entered against RMMA for failing to answer Martini's complaint. The case against the remaining parties proceeded to trial on October 1, 2018. On October 2, 2018, the trial court granted Martini's motion *in limine* to exclude evidence related to the first case. On October 5, 2018, the jury returned its verdict. The jury answered interrogatories on the verdict sheet, finding Rocco did not enter into his $65,000 transaction with RMMA in good faith and did not give reasonably

---

[1] Ms. Mizia was originally named a defendant in the instant action. Upon stipulation of the parties, the trial court discontinued the action against her.

equivalent value for what he received in the transaction; finding PNC did enter its transaction with RMMA in good faith and gave reasonably equivalent value for what it received; finding RMMA's corporate veil should be pierced, making Rocco personally liable for Martini's judgment against RMMA; and finding PNC did not merge with RMMA so as to assume RMMA's obligation to pay Martini. Verdict Sheet, 10/5/18, at ¶¶ 1-6.

With regard to paragraph 12 of the agreement of sale, the jury determined PNC did assume RMMA's obligation to pay Martini, *id.* at ¶ 7, and found that Rocco fraudulently induced PNC to revise that paragraph. *Id.* at ¶ 8. Further, the jury concluded PNC was entitled to indemnification from Rocco and RMMA but was not entitled to a defense from either. *Id.* at ¶¶ 9-10. Finally, the jury awarded damages to Martini in the amount of $69,621 and found Rocco's behavior regarding the $65,000 transaction with RMMA outrageous, wanton and/or reckless, warranting an award to Martini of punitive damages against Rocco in the amount of $125,000. *Id.* at ¶¶ 11-13.

Following consideration of post-trial motions and proposals from Martini, Rocco, and PNC to mold the verdict, the trial court issued an order denying Rocco's motion to mold the verdict, and entered judgment a) on the jury's verdict in favor of Martini against Rocco for compensatory damages of $69,621 and punitive damages of $125,000, b) in favor of PNC against Martini on all counts of his complaint, and c) in favor of PNC against RMMA and Rocco on

PNC's crossclaim for indemnification. Order, 6/11/19, at 1. The order further

directed:

> Paragraph 12 is hereby severed from the Agreement of Sale pursuant to the severability clause of paragraph 24.[2] [Judgment] is hereby entered on the jury's verdict in favor of [PNC] and against [Rocco] on [PNC's] claim that [Rocco] fraudulently induced [PNC] to revise paragraph 12 of the Agreement of Sale between [RMMA, Rocco, and PNC].

*Id.* at 1-2.

On June 11, 2019, the trial court issued an opinion in conjunction with

its order disposing of post-trial motions. Rocco filed a timely notice of appeal

and filed a concise statement of errors in accordance with Rule 1925(b) raising

seven issues. On August 21, 2019, the court issued its Rule 1925(a) opinion,

incorporating its June 11, 2019 opinion. The trial court subsequently

determined that Rocco timely filed a supplemental Rule 1925(b) statement

raising three additional issues. On August 27, 2019, the court issued a

supplemental opinion to address those issues.

Rocco asks this Court to consider seven issues on appeal:

A. Whether the trial judge erred by granting [Martini's] motion in limine and excluding evidence that was relevant to the prior case, namely the checks paid by [Rocco] to [Martini]?

B. Whether the trial court erred in its decision that [Rocco] did not enter into his $65,000 transaction with [RMMA] in good faith

---

[2] Paragraph 24 is a severability provision that preserves remaining provisions of the agreement of sale "in the event that for any reason one or more **non-material provisions** of this Agreement" are held "invalid, illegal or unenforceable." (Emphasis added.)

or give reasonably equivalent value for what he received in the transaction?

C. Whether the trial court erred in its decision to pierce the corporate veil, thus making [Rocco] personally liable for [Martini's] judgment against [RMMA]?

D. Whether the trial court erred in its decision that [PNC] was entitled to indemnification from [Rocco]?

E. Whether the trial court erred in its decision that [Rocco] fraudulently induced [PNC] to revise paragraph 12 of the agreement of sale?

F. Whether the trial court erred in its decision to award punitive damages to [Martini]?

G. Whether the trial judge erred in her molded verdict when she changed the decisions of the jury and included damages/actions that were neither discussed nor pleaded in favor of [PNC] and against [Rocco]?

Appellant's Brief at 7-8 (some capitalization omitted).

Before discussing the merits of Rocco's issues, we first address Martini's application to quash the appeal in light of Rocco's failure to file a timely brief. According to the Court's briefing schedule, Rocco's brief was to be filed on or before October 2, 2019. On September 27, 2019, Rocco's counsel requested an extension of 30 to 60 days to file the brief. By order entered October 2, 2019, we granted a 60-day extension, setting a new filing deadline of December 2, 2019.

On November 23, 2019, Rocco's counsel requested an additional extension of 90 to 120 days in order to address a procedural issue relating to service of Martini's amended complaint on RMMA, an unrepresented party

against which default judgment was entered six months before the amended complaint was filed. Martini filed a response on November 29, 2019, opposing the extension. By order entered December 13, 2019, we denied the application. Although Rocco's brief was due on December 2, 2019, Rocco did not file his appellate brief until December 31, 2019.

On January 2, 2020, Martini filed an application asking this Court to quash the appeal in accordance with Pa.R.A.P. 2188 for Rocco's failure to file the brief by the December 2, 2019 filing deadline. Martini's counsel asserted prejudice resulting from Appellant's delay, essentially contending counsel was prepared to comply with the Court's briefing schedule and had to rearrange his schedule when Appellant did not file a brief in accordance with that schedule. Counsel also noted his upcoming schedule and requested an additional 30 days to file a brief in the event the application to quash should be denied.

Rocco filed a response, explaining he contacted this Court's Prothonotary's Office on November 27, 2019 and asked the consequences of not filing his brief by December 2, 2019 if this Court had not yet ruled on his application for an extension. Counsel related his understanding that a dismissal would not occur while the application remained open, or as long as the brief was filed within thirty days. Unsure whether that meant 30 days from the original due date or the date of this Court's ruling, counsel opted to

use the earlier of the two dates and filed the brief on December 31, 2019, within thirty days of the December 2, 2019 filing deadline.

By order entered January 10, 2019, we denied the application to quash without prejudice to Martini's right to raise the issue again before this merits panel. The order also granted Martini's request for an extension until March 2, 2020 to file his brief.

While Pa.R.A.P. 2188 empowers an appellee to move for dismissal if an appellant fails to file a brief within the prescribed time, it does not mandate dismissal of the appeal. While we do not endorse counsel's decision to craft his own filing schedule based on his "understanding" of a discussion with Court personnel,[3] we also are not persuaded by the claims of "undue hardship" asserted by Martini's counsel. See Application to Quash and Rocco's Answer. Neither counsel has cited case law addressing dismissal for untimely filing of a brief such as occurred in this case. However, in **Rosselli v. Rosselli**, 750 A.2d 355 (Pa. Super. 2000), the appellant disregarded rules relating to reproduced records. We recognized that "[w]hile this Court has, in the past, admonished appellants who have failed to comply with the Rules of Appellate

---

[3] We admonish Rocco's counsel to avoid basing "understandings" on discussions with Prothonotary's Office personnel who are not authorized to dispense legal advice. We similarly admonish counsel for PNC not to cite discussions with the Prothonotary's Office personnel as the basis for taking or not taking actions and remind counsel that letters directed to that office do not constitute court filings.

Procedure, we have also warned that in appropriate cases we will not hesitate to impose sanctions, including dismissing or quashing an appeal under Pa.R.A.P. 2101 and 2188." *Id.* at 359 (citations omitted).

In the August 23, 2019 letter establishing the original deadline for Rocco's brief, we advised:

> Upon failure to timely file briefs for the appellant, the court will, on its own motion and without further notice, dismiss the appeal. If the briefs are filed late but before the appeal is dismissed counsel shall not be permitted to argue but shall be available to answer any questions the court may ask.

Appellant Briefing Schedule Order, 8/23/19, at 1. Here, Rocco's brief was filed late but before the appeal was dismissed. Therefore, Rocco's counsel would not be permitted to argue.[4]

Because we did not dismiss the appeal prior to the late filing of Rocco's brief, our disposition of Martini's application to quash at this juncture is an exercise of this Court's discretion. Finding Martini's counsel has not asserted any prejudice beyond the inconvenience of juggling a busy schedule, we shall refrain from imposing the sanction of dismissing the appeal. Further, we granted Martini's requested extension for filing his responsive brief, and note

---

[4] We note that Rocco subsequently filed an application for oral argument. Martini opposed the request, contending oral argument was not necessary and that "there should be some consequence for [Rocco] unilaterally granting himself an extension[.]" Answer to Application for Oral Argument, 3/23/20, at 3-4. On March 27, 2020, we denied the application.

that he filed his brief four days prior to the scheduled deadline. Martini's Application to Quash is denied.

Having disposed of the application to quash, we turn to the merits. In his first issue, Rocco contends the trial court erred by granting Martini's pretrial motion *in limine*, thereby preventing Rocco from introducing checks paid by RMMA to Martini between 2008 and 2011. As this Court noted in ***Buttaccio v. American Premier Underwriters, Inc.***, 175 A.3d 311 (Pa. Super. 2017):

> The purpose of pretrial motions *in limine* is to "give the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." ***See Parr v. Ford Motor Co.***, 109 A.3d 682, 690 (Pa. Super. 2014) (*en banc*) (citation omitted). A trial court's decision to grant or deny a motion *in limine* "is subject to an evidentiary abuse of discretion standard of review." ***Id.*** (citation and question marks omitted).

***Id.*** at 320 (alteration omitted).

The trial court determined that Rocco was attempting to relitigate the first case by introducing checks that were used by Martini to prove his claim in that breach of contract case. Rocco asserted that he was prejudiced by the court's ruling because it denied him the chance to explain the first case to the jury and the opportunity to prove his character. Rocco's Brief at 23-25. Martini countered that relevance, not prejudice, is at issue here. Martini's Brief at 14.

The trial court rejected Rocco's prejudice argument, stating, "I don't see how the fact that there were checks written . . . [e]ight years earlier has anything to do with whether they're paying their bills at the time that's

relevant to this lawsuit." Trial Court Opinion, 6/11/19, at 8 (quoting Notes of Testimony, Trial, 10/2/18, at 76-77). "The present case was about fraudulent transfers that occurred in June 2016 when Rocco sold all of RMMA's assets and transferred the money to himself. Checks between 2008 and 2011 were not relevant to any issues surrounding the fraudulent transfers." *Id.*

We find no abuse of discretion in the trial court's grant of Martini's motion *in limine*. Rocco's first issue lacks merit.

In his next five issues, Rocco argues trial court error for determining Rocco did not enter into his $65,000 transaction with RMMA in good faith; for deciding to pierce RMMA's corporate veil; for concluding PNC was entitled to indemnification from Rocco; for determining Rocco fraudulently induced PNC to revise paragraph 12 of the agreement of sale; and for deciding to award punitive damages to Martini. However, the trial court did not "decide" any of those issues. The jury did, based on the facts presented at trial and the instructions of the trial court, to which no objection was lodged by Rocco.

A review of Rocco's brief does not shed any light on the basis for his contention the "trial court erred" in any of "its" determinations. As the trial court observed:

> Rocco's brief failed to identify whether he was challenging the sufficiency of the evidence to support the jury's determinations and seeking a judgment nothwithstanding the verdict (JNOV),or whether he was challenging the weight of the evidence and seeking a new trial." Instead, the conclusion to his ***motion or brief*** asked for JNOV or alternatively a new trial. [Rocco's] brief concluded that Rocco was seeking a JNOV and this court agrees.

- 11 -

None of Rocco's issues or the argument in his brief mention the "weight of the evidence."

Neither a JNOV nor a new trial was appropriate because Rocco's inadequate argument (1) did not discuss the different standards for sufficiency and weight claims, (2) did not set forth the factual basis for either, and (3) did not analyze the facts of each issue together with the relevant law. Consequently, Rocco waived [the five] issues.

Trial Court Opinion, 6/11/19, at 9-10 (emphasis in original).

We agree. In essence, in the argument section of his brief addressing these five issues, Rocco presents an outline of evidence in a light most favorable to himself rather than to the verdict winners. He then jumps to the conclusion that the **trial court** erred in deciding the issues against him and that this Court "should reverse the trial court's findings[.]" Rocco's Brief at 60 (capitalization omitted). Alternatively, if we determine "a new trial is an inappropriate remedy," we "should reverse the findings of the trial court and the judge (*sic*)" on all of Rocco's issues. **Id.** at 60-61 (some capitalization omitted).

As this Court explained in **James v. Albert Einstein Medical Center**, 170 A.3d 1156 (Pa. Super. 2017):

Appellant's []argument misapprehends the purpose of appellate review. This is an error correcting Court. We do not sit to re-weigh the evidence and, if so inclined, overturn the jury's verdict. Instead, to prevail on appeal, it was Appellant's burden to prove an error of law, or that no two reasonable minds could disagree that the verdict was in error.

Under our standard of review, our role is to read the record in the light most favorable to the verdict winners and, granting the verdict winners the benefit of every favorable inference, to

- 12 -

determine if there is sufficient competent evidence to support the verdict. *See Tillery* [*v. Children's Hosp. of Philadelphia*, 156 A.3d 1233, 1239-40 (Pa. Super. 2017)]. Mindful of that standard, we conclude that there is. For Appellant to prevail on a claim for JNOV it is not enough for Appellant's argument merely to recite a self-serving version of the facts and to frame the conclusion in the language of the standard. Appellant's claim for JNOV would fail under our standard of review.[5]

*Id.* at 1165 (reference to record omitted).

Even if properly presented to the trial court and to this Court as a challenge to a denial of a motion for JNOV, Rocco cannot prevail. Viewing the evidence presented in this case in the light most favorable to the verdict winners, we conclude there was sufficient competent evidence to support the jury's verdict. To the extent they are not waived, Rocco's second through sixth issues fail for lack of merit.

In his seventh and final issue, Rocco argues the trial court erred by molding the verdict in three respects: by finding in favor of PNC after the jury determined PNC assumed RMMA's obligations under paragraph 12 of the agreement of sale; by severing paragraph 12 of the agreement of sale in absence of a severance request by PNC and in absence of law authorizing such severance; and by severing paragraph 12 under the severability clause (paragraph 24) of the agreement when neither the verdict sheet nor PNC

---

[5] The Court defined that standard as "whether, reading the record in the light most favorable to the verdict winner and granting the benefit of every favorable inference, there is sufficient competent evidence to support the verdict. Any conflict in the evidence must be resolved in the verdict winners' favor." *James*, 170 A.3d at 1165.

requested severance of paragraph 12. Rocco's Brief at 54-55. This issue was first raised in Rocco's amended Rule 1925(b) statement. However, as Rocco explains, "the severability clause [of paragraph 24], and the issues that would surround its use, were not at issue, nor argued by any party, in this case." Amended Concise Statement, 8/20/18, at ¶ 10.

Our review of the record confirms this assertion. The issue of severability did not become an issue until PNC raised it in its post-trial motion and the trial court announced in its June 11, 2019 order that "paragraph 12 is hereby severed from the agreement of sale pursuant to the severability clause of paragraph 24." Order, 6/11/19 at 1 (capitalization omitted).

Paragraph 24 of the agreement of sale provides:

24. In the event that for any reason one or more **non-material provisions** of this Agreement or their application to any person or circumstance shall be held to be invalid, illegal or unenforceable in any respect or to any extent, such provisions shall nevertheless remain valid, legal and enforceable in all such other respects and to such extent as may be permissible. In addition, any such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

Agreement of Sale, 6/15/16, at ¶ 24 (emphasis added).

On the jury verdict sheet, the jury was asked to answer two questions that involved paragraph 12 of the agreement. The jury was asked:

7. Did [PNC] assume [RMMA's] obligation to pay [Martini] $68,121 plus $1,500 in attorney's fees pursuant to paragraph 12 of the Agreement of Sale?

The jury answered, "Yes." Jury Verdict Sheet at ¶ 7. The jury was then asked:

- 14 -

8. Did [Rocco] fraudulently induce [PNC] to revise paragraph 12 of the Agreement of Sale between [RMMA, Rocco and PNC]?

The jury responded, "Yes." Jury Verdict Sheet at ¶ 8. The jury was next asked:

9. Is [PNC] entitled to indemnification from [Rocco and/RMMA]?[6]

The jury answered, "Yes" with respect to both Rocco and RMMA. Jury Verdict Sheet at ¶ 9. The jury was not asked to make any findings regarding paragraph 24, nor was the jury asked to consider whether the provisions of paragraph 12 constituted non-material provisions of the agreement subject to severance.

When a trial court molds a verdict, we review its decision for abuse of discretion. In *Carlini v. Glenn O. Hawbacker*, 219 A.3d 629 (Pa. Super. 2019), this Court reiterated:

Additionally, "It is well settled that a trial court in this Commonwealth has the power to mold a jury's verdict to conform to the clear intent of the jury." *Mendralla v. Weaver Corp.*, 703 A.2d 480, 485 (Pa. Super. 1997) (*en banc*) (citation omitted).

_____

[6] The agreement to indemnify was included in the agreement of sale at paragraph 9. In this regard, we note that in *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179 (Pa. Super. 2005), we stated, "Our Supreme Court and this Court have consistently held that the victim of fraud in the inducement has two options: (1) rescind the contract, or (2) affirm the contract and sue for damages." *Id.* at 1184. Here, without resorting to rescission of the contract, PNC can affirm the contract and sue for damages, as provided for in the indemnification provisions of paragraph 9 of the agreement of sale, as specifically recognized by the jury in answer to ¶ 9 of the jury verdict sheet.

> The power of a trial judge to exercise his discretion in molding a verdict to fit the expressed desires of the jury is a cornerstone of the jury system. Moreover, verdicts which are not technically correct in form but which manifest a clear intent on the part of the jury may be corrected without resort to further jury deliberations or the grant of a new trial.

> *Mirizio v. Joseph*, 4 A.3d 1073, 1088 (Pa. Super. 2010) (citation and brackets omitted).

*Id.* at 639. *See also Walsh v. Pennsylvania Gas & Water Co.*, 449 A.2d 573, 575 (Pa. 1982) (in exercising discretion to mold a verdict, the trial judge "must tread with caution so as to avoid invading the province of the jury") (citation omitted).

> The power of a trial court to mold a verdict is not unlimited, and a verdict may not be molded where the intention of the jury is not obvious, or where the intention of the jury has not been expressed at all[, . . . ] or to satisfy the supposed equities of the case.

*House of Pasta, Inc. v. Mayo*, 449 A.2d 697, 701-02 (Pa. Super. 1982) (citations omitted). "Nor may a verdict be molded to express an intention on the part of a jury when the question was never submitted to the jury." *Id.* at 702 (citation omitted).

Here, with regard to punitive damages, the jury found in favor of Martini and against Rocco and awarded $125,000 to Martini. The trial court did not alter that award in its June 11, 2019 order announcing the molded verdict. The jury also determined PNC was entitled to indemnification from RMMA and

- 16 -

Rocco. The trial court similarly did not disturb that finding.[7] However, the remainder of the court's molded verdict does not reflect the intent of the jury as reflected in the answers provided on the jury verdict sheet.

In its molded verdict, the trial court determined Rocco was solely liable to Martini for compensatory damages in the amount $69,621, the damages awarded Martini in the first case. While the jury found Rocco personally liable to Martini based on piercing RMMA's corporate veil, the jury also determined that PNC, while fraudulently induced to revise paragraph 12 of the agreement of sale, nevertheless assumed the obligation to pay Martini the judgment totaling $69,621 from the first case. PNC would then be entitled to indemnification from RMMA and/or Rocco. The trial court ignored the jury's findings when it found Rocco solely liable to Martini and found in favor of PNC on the claims Martini asserted in his first amended complaint, despite PNC's contractual obligation to pay RMMA's debts under paragraph 12 of the agreement of sale. As a consequence of that finding, the trial court rendered the jury's determination regarding indemnification meaningless.

In spite of the jury's finding that PNC agreed to assume RMMA's liabilities under paragraph 12, the trial court molded the verdict in such a way

_____

[7] While the trial court did not specifically alter that finding, it did render it meaningless, as noted below.

- 17 -

as to disturb that finding, relying on the language of paragraph 24.[8]  As set forth above, paragraph 24 sanctioned severance of **non-material** provisions of the agreement found to be invalid, illegal or unenforceable.  In doing so, the trial court unilaterally made a factual determination that the provisions of paragraph 12 were non-material.  The court does not offer any basis for making that determination.  Clearly, the language of paragraph 12 was not insignificant boilerplate language.  The language carried considerable legal ramifications, with PNC agreeing to assume the debts and liabilities of RMMA.  While interpretation of a contract may well be the province of the trial court, as the court suggests, determining whether a contract provision is material is, as Martini suggests, akin to determining whether a breach of a contract is a material fact.  Martini's Brief at 48-49 (citing ***Eigen***, 874 A.2d at 1186).

By molding the verdict as it did, we find the trial court abused its discretion and invaded the province of the jury, disregarding its findings as reflected on the jury verdict sheet, which was the result of a joint collaboration of the parties and the trial court.  "While a trial court has discretion in deciding

---

[8] It merits mention that PNC did not seek severance of paragraph 12 in its pleadings.  In fact, in its prayer for relief, PNC asked the court to determine, *inter alia*, that the court find Rocco and RMMA "solely liable to [Martini] or jointly and severally liable to [PNC] for contribution or indemnity on [Martini's] underlying cause of action."  Prayer for Relief, PNC's Answer with New Matter and Crossclaim, at 26.  PNC first requested severance in its post-trial motion, contending paragraph 12 was non-material or, alternatively, that the trial court should reform the contract using equitable principles, returning paragraph 12 to the original version.  PNC's Post-Sentence Motion at 3-6.

whether to mold a verdict, it must nonetheless adhere to the principle that a verdict may only be molded where the intention of the jury is clear." **Mendralla**, 703 A.2d at 486. In this instance, the jury did not state any intention to find that the provisions of paragraph 12 were non-material. Nor was there any finding that the provisions of that paragraph were invalid, illegal or unenforceable. By molding the verdict as it did, the trial court ignored the intention of the jury.

We are constrained to hold that the court abused its discretion in molding the verdict as reflected in the June 11, 2019 order. Therefore, we reverse the June 11, 2019 order insofar as it improperly molds the verdict and remand to the trial court for issuance of an order that reflects the jury's findings.

To summarize, we affirm the trial court's October 2, 2018 pre-trial order granting Martini's motion *in limine* to exclude evidence related to the first case. We also affirm the jury's factual findings challenged by Rocco, which Rocco miscasts as trial court's legal findings. Finally, we find the trial court abused its discretion in molding the verdict in a manner that fails to reflect the jury's findings as expressed on the jury verdict sheet. Therefore, we reverse the June 11, 2019 order and remand with instruction to the trial court to mold the verdict so that it accurately reflects the jury's findings.

Order of October 2, 2018 affirmed. Order of June 11, 2019 is affirmed in part and reversed in part. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judge Shogan joins this memorandum.

Judge McLaughlin files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/20